# Richmond

## WILLIAM S. HEINDL v. ASA PERRITT.

March 24, 1932.

Present, Holt, Epes, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Sinnott, May & Leaman* and *J. A. Gobel,* for the plaintiff in error.

*Wm. C. Coulbourn* and *Ralph C. Bethel,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

In the trial court Asa Perritt was the plaintiff and William S. Heindl was the defendant and in such relation they will sometimes be subsequently referred to.

The plaintiff instituted an action at law, by notice of motion, in the Law and Equity Court of the city of Richmond, against the defendant for damages in the sum of $20,000.00, for injuries sustained by reason of the alleged negligence of the defendant in so operating his automobile as to cause him to be run over and knocked down and severely hurt, bruised and wounded. The jury rendered a verdict in the plaintiff's favor awarding him $5,000.00 damages, which the court refused to set aside upon the motion of the defendant.

The case is before this court upon a writ of error awarded the plaintiff in error (defendant). There are two assignments of error but we shall be concerned with only the first as its determination will be decisive of the case.

Assignment of Error No. 1.

"The court erred in refusing to set aside the verdict of the jury and enter final judgment for the defendant on the ground that the plaintiff was guilty of contributory negligence as a matter of law."

The accident happened on the night of the 24th day of January, 1930, between seven and eight o'clock. The plaintiff alighted from a southbound street car on Harrison street, in the city of Richmond, at the northwest corner of the intersection of Harrison and Grace streets. The street car was of the type known as a "one-man" car, being operated by one man, who sits at the front end. The plaintiff alighted at the front end and immediately walked in front of the car proceeding to cross Harrison street to the northeast corner of said street with Grace street. He walked straight across and when he reached the far rail of the northbound car tracks, the street railway being double tracked, he was struck by the automobile driven by the defendant, which was proceeding north on Harrison street opposite to the direction of the street car from which the plaintiff had alighted.

Counsel for the defendant quoted from the plaintiff's testimony to sustain his contention that the plaintiff's own account of the happening convicted him of contributory negligence as a matter of law. We here quote his testimony relating to this feature of the case.

Part of testimony of plaintiff in chief.

"A. * * * And when I got off I walked around in front of the street car and on across the street; but, as I walked around, I looked south on Harrison to see if there was any car moving, street car or automobile that would endanger me in going across, and I saw no car moving near the intersection, and I proceeded across. As I looked up Grace street I saw one automobile going west on Grace street, running pretty fast, and I watched that car until it struck the intersection. As it struck the intersection it continued west and I made no halt; but as it passed a car pulled up on me, sounded like an airplane, it was roaring so. It was right on me. I whirled my back and made an attempt to jump, and did jump, I guess. I must have

been in the air or arising from the ground when the car struck me and knocked me ahead several feet and then rolled on to me. * * *

"Q. At that time were there any cars parked along Harrison street, so far as you could see?

"A. There was one car parked against that confectionery, headed towards Grace; but it was up against the curb, and there was a confectionery on the other corner.

* * * * * * * * * * *

"Q. On the southeast corner?

"A. On the southeast corner of Harrison.

* * * * * * * * * * *

"Q. Mr. Perritt, where were you when you saw this automobile that was going west on Grace street?

"A. Just as I turned around the street car, I looked across to my right, on Harrison; then up Grace, and there was a car coming, about thirty or forty feet from the intersection, headed west."

Part of testimony of plaintiff on cross examination.

* * * * * * * * * * *

"Q. What was the course that you took in order to cross over there—did you go diagonally, or did you go straight across until the collision occurred?

"A. I went direct on Grace street, right by the intersection. I got over right at the edge of the sidewalk; then I proceeded straight across like the street sidewalk, on the edge of the intersection.

* * * * * * * * * * *

"Q. I am trying to get a more definite understanding of where you were. As I understand it, you had just turned around to begin to go across the front of the street car when you first saw this car going in a westerly direction?

"A. No, I was walking, I expect in that time I had passed the street car, because I did not stop. I just stepped off the street car and right around. I did not make any

halt, because everything was perfectly bright. The street car lights and lights of parked automobiles and the lights from those two confectioneries made it as light as day in the intersection. I looked across Harrison to see that there were no cars or automobiles coming to endanger me in crossing; then my eye went up Grace street and I saw this car coming headed west on Grace. I watched this car until it came to the intersection, in case it turned at that corner I would not come in contact with it. They slow up and if you watch them there is no danger. I saw it was headed west as it got in the intersection, and as it did it whipped by me; it was running pretty fast.

\* \* \* \* \* \* \* \* \* \* \*

"Q. Is that the last time you looked to the south?

"A. I don't recall any looking over there after that.

"Q. So, you would say that you did not look over there any more?

"A. I don't recall that I looked over there any more. I saw there was no danger when I just looked and I don't recall that I looked any more.

"Q. That was just as you turned around the street car?

"A. That was just as I turned around and was walking across, in front of the street car.

\* \* \* \* \* \* \* \* \* \* \*

"Q. Did you look to the south when you entered the first track of the northbound tracks until the collision occurred?

"A. Not that I recall.

"Q. Is your eyesight good?

"A. Yes, fairly good.

"Q. Is your hearing good?

"A. Yes, sir.

\* \* \* \* \* \* \* \* \* \* \*

"Q. If when you reached that first car track of the northbound track you had looked south, could you have seen that car coming?

"A. When I reached the track?

"Q. Yes.

"A. I could have seen it and did see it when I was in the car track. There was nothing to keep me or anybody from seeing at the intersection. I saw it in about three or four feet from me, while I was in that car track.

"Q. From the time you turned the corner of the street car until the time you reached the first of the northbound car tracks, if you had looked south, do you know of anything which would have prevented you from seeing the oncoming automobile?

"A. I have just answered that. I looked south when I came over and there was no car moving in that direction. I looked down as far on that track as I thought necessary, and there was no car moving there.

"Q. Do you understand the question, Mr. Perritt?

"A. Yes, I understand it. If I had been looking over there, which I did look, I did not see anything. When I did look again I was in the car track. I saw the automobile coming on me. I saw this other one pass me right in this car track, where I could have seen him, if I had looked over there. Possibly if I had looked I could have seen him on south Harrison street, but I had just looked over there and did not see anything. I thought my way was clear and nothing would overtake me before I could get across, unless it was a flying machine.

"Q. I will repeat the question. (Question repeated.)

"A. There was no obstacle on the intersection, whatever, to have prevented anyone from seeing.

"Q. How far could you see south?

"A. I could have seen half way of the block, or near half way, or at least forty or fifty feet on the other side. As I went across there was light all along near the intersection of Harrison. I could have seen as far on that as any ordinary street. I looked across as I told you at first, to see if

I was in danger any way of anything. I did not see any automobile or car. That is why I turned to look to see if I was clear in crossing.

"Q. If the automobile had headlights burning you could have seen it a block or more away, could you not?

"A. I could have seen it a block, but I did not look.

"Q. How far did you look?

"A. Twenty or thirty feet. Between the intersection at any ordinary gait I could have made it across if he had been within twenty feet of the intersection, and I did not see anything as I started across, and at any time I could have seen anything coming in there, if I had looked, because there was nothing between us, except the car going west on Grace street.

"Q. You saw the car when it got in three feet of you?

"A. I would say three or four feet. Just as this car passed me I heard that terrible roaring and I glanced and there it was right on me."

Viewing this testimony together we cannot see that it fixes upon the plaintiff contributory negligence as a matter of law. Through an exhaustive examination of his own, and opposing counsel, the witness adhered stoutly to the statement that as he walked past the front of the street car he looked south on Harrison street and saw no car of any kind moving in his direction. It is true that when pressed by the cross-examiner he stated that he looked twenty or thirty feet south. This, in our opinion, is the strongest circumstance against him. In this, we think, he did himself an injustice, for what he actually saw to the south on Harrison street shows that his vision must have reached further than twenty or thirty feet. He saw a car parked below the intersection on the southeastern corner of Harrison street. In order to see this car he had to look obliquely across Grace street, which is thirty-nine feet wide. This car was parked in front of a confectionery store. It could

not have been actually adjacent to Grace street for then it would have impeded pedestrians, passing, which is against police regulations. He was obliged to have looked south a greater distance than twenty or thirty feet. He saw cars parked on the other side of Harrison street and he saw east on Grace street, thirty or forty feet, a car headed west which passed him in the intersection.

Counsel for defendant urges that he could have seen south a block or more away, if he had looked. Suppose he had seen defendant's car a block or a half of a block away, how could he have known that when it reached Grace street, it would not turn to the right or left. There is no rule of law or usage, of which we know, that would require him, if he had seen a car a block or a half a block away, with the intersection between, to stand and wait to ascertain what that car would do or where it would go, particularly when he had only about twenty feet to go in crossing Harrison street. Harrison street, it will be noted, was only twenty-nine feet and some inches wide.

"The measure of duty imposed upon a pedestrian about to cross a city street, where motor vehicles of all kinds are frequently passing, is that he shall use such care as a person of ordinary prudence would use under like circumstances, and whether or not he did use such care is ordinarily a question for the jury. *Va. Ry. & Power Co.* v. *Boltz,* 122 Va. 649, 95 S. E. 467." *Core* v. *Wilhelm,* 124 Va. 150, 154, 98 S. E. 27, 28.

In *Core* v. *Wilhelm, supra,* a case very like the one in judgment, and in which the principles announced are controlling here, this court said: "Of course, he cannot blindly, or negligently expose himself to danger, but he is not required to be continuously looking and listening to ascertain if automobiles are approaching, under penalty that upon failure to do so, if he is injured, his negligence must be conclusively presumed. *Hennessey* v. *Taylor,* 189

Mass, 583, 76 N. E. 224, 3 L. R. A. (N. S.) 345, 4 Ann. Cas. 396; *Shea* v. *Reems,* 36 La. Ann. 966."

■ Let us look for a moment to the testimony of the defendant. He was driving north on Harrison street approaching its intersection with Grace street where he might reasonably expect automobiles and pedestrians to be continually passing. It was his duty to keep a lookout and have his automobile under control and slow up and even stop, if necessary, to avoid injuring others having the same rights in the streets as himself. Indeed in the case in judgment the plaintiff, in the circumstances, had a superior right in the use of Harrison street, for the purpose of crossing it, at the time, for when he was struck, he had nearly completed his way across. When the plaintiff looked, as he walked in front of the street car, and saw nothing to prevent his going ahead with safety and he proceeded to do so, he had the right of way by statute and the defendant, if he were a block or a half a block away or closer to the intersection, should have seen him, if a person of ordinary prudence would have done so, and respected his rights already existing. Code of Virginia, section 2145 (73), with respect to pedestrians crossing street intersections within incorporated towns or cities is as follows:

"(c) At such intersection where no traffic officer is on duty pedestrians shall have the right of way over vehicles.

"(d) This shall not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing."

The defendant testified that as he approached the intersection he saw the street car standing on the northwest corner of Harrison street but he did not look to the right or the left; that he did not see an automobile going west

on Grace street; that he did not blow his horn at all; and that he did not see the plaintiff until he stepped in front of his car. This is remarkable to say the least.

We quite agree with plaintiff's counsel that the most apposite case to the one in judgment is that of *Core* v. *Wilhelm, supra,* in which the facts were very similar to those here, and the court said: "The rights of the parties at the crossing were equal and reciprocal, and it was the duty of each to look out for the other. The defendant saw, or ought to have seen, the plaintiff attempting to make the crossing, and it was her duty to have had her car under such control that she could have stopped it if necessary in order to have avoided the accident. The injury occurred at a corner where the defendant might reasonably have expected to encounter foot passengers crossing the street, and it was her duty to keep a lookout for them. Her view was unobstructed—'there was no other automobile on the block'—and she had no right to endanger the lives or limbs of other people on the streets whose rights in the street were equal to her own. She was operating an electric automobile, approaching a crossing which the plaintiff was upon and attempting to cross, and she saw or ought to have seen him, and yet gave no signal of her approach. There is no evidence of the speed at which she was driving, or that the speed was lessened. The jury would have been warranted, under these circumstances, in inferring that she did not have her car under such control as would have enabled her to have avoided the injury and that she was negligent in its operation."

The two cases most relied upon by the defendant are *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711 and *Stephen Putney Shoe Co.* v. *Ormsby's Admr.,* 129 Va. 297, 105 S. E. 563, 566, both of which embrace important facts, rendering them readily distinguishable from this case. In the first case the only eye-witness to the happening was driving

immediately in the rear of the defendant's car and he testified that the plaintiff did not look at all before attempting to cross Broad street; that he proceeded across with his head down and walked into the side of defendant's car.

In the second, *Stephen Putney Shoe Co.* v. *Ormsby's Admr.*, the plaintiff stepped from the curb, a place of safety, only about three or four feet ahead of an oncoming truck and "came against the fender" and was knocked down. This is a part of the statement of facts found in the opinion of this court in that case.

Many other cases decided by this court are cited by defendant in his petition and reply brief, most of which involve accidents at either steam or electric railroad crossings, as to which a different rule of duty and conduct obtains. We deem it unnecessary to prolong this opinion by further adverting to them.

We find no error in the ruling of the trial court upon either assignment, the latter being upon an instruction which was refused, and therefore its judgment is affirmed.

*Affirmed.*

EPES, J., dissenting.