# Wytheville

### A. P. MOORE v. JOHN G. SCOTT.

June 15, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Joseph F. Hall,* for the plaintiff in error.

*Scott, Lloyd & Scott,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff below was struck by the defendant's automobile. For injuries suffered he has recovered a verdict and judgment. Doctor Scott is an Episcopal minister, and lived at the Jefferson Hotel. On Sunday morning, March 9, 1930, he came from its Main street entrance with the intention of catching an eastbound street car, which would have carried him part of the way to his church, situated in Henrico county. He stopped for a moment to give certain directions to a stranger when one of the bellboys called his attention to the fact that his car was coming. He said:

"I went on down to the corner of Jefferson and Main, going west, then I turned and looked east. Not seeing any car in any reasonable distance, thinking it was abundance of time to cross, I stepped out in the street and started across the street, and, when in the street, I turned and looked west, looking for traffic and for the on-coming street car, which was approaching down the hill; and, as I was looking at it and walking, something struck me and I was tossed up. I was looking straight down the street car tracks, and as I went up the street car tracks apparently went up in the air

with me, trees and street cars and all. I went straight up quite appreciably, and then all of a sudden everything went black. That is the last I remembered until I came to my senses and found out I was in Memorial Hospital."

Again he made this statement: "I came out here, out of this entrance. Then I stopped right here, and then there was a car right at this point here, just to the west of here, and George Walker was putting people in it. After giving them information they drove off, and I walked up this way; car wasn't coming and I turned back and George said 'Doctor, your car is coming.' Then I walked down the street to this point and stepped out and looked this way (looked east), didn't see anything, stepped across here, and when I had gotten into the midst of the street car tracks, looking west at the street car coming and the traffic; then, when I got right in there, something struck me and knocked me right in the air." And that "I was struck from behind, I never saw the car that struck me at all." At different times and in statements that are in substantial accord, he tells us of the precautions which he took. He was at a street intersection and in the proper passageway for pedestrians. He "stepped out and looked this way" (looked east). "I went on down to the corner of Jefferson and Main going west. Then I turned and looked east."

"Q. You said you looked to the east?
"A. Yes, sir. I looked to the east.
"Q. After stepping out?
"A. Yes, sir."

Afterwards he continued to look to the west, from which his street car and an automobile were approaching. He was asked if he walked rapidly and answered, "Yes. Well, I suppose I walk fairly briskly. I really was under no compulsion at all in the matter. I went in the ordinary way." The city block between Adams street and Jefferson street is 265 feet long. There were no cars parked to the west of "No Parking" sign which was about thirty-seven feet east of the hotel door. There were some cars parked to the

east of it. With the exception of these parked cars there were then no cars in this block west of Adams street, which were then moving west. When struck he had "gotten into the midst of the street car tracks." It was about eighty feet from the hotel door to the east line of the eastern sidewalk of Jefferson street, and about 132 feet from the "No parking" sign east of the hotel entrance to said sidewalk line on Jefferson street. Main street from curb to curb is forty-one feet wide and, of course, it is twenty and one-half feet to the center of that street. It is thirteen and one-half feet from the north curb of Main street to the north rail of the westbound car line. These car tracks are five feet wide and it is four feet from the south rail of the westbound car track to the north rail of its eastbound track.

At the Memorial Hospital, to which Moore carried Scott after the accident, Moore told the assistant superintendent that "he was hurrying along to go to some place on west Main street and as he got beyond the Jefferson Hotel he saw a gentleman crossing the street; that he thought he had time to get across the street and he would go by him, but he didn't understand how he struck this gentleman." He told Scott's sister, "I saw the gentleman crossing the street. I knew he didn't see me because he was looking west for an eastbound car." "He (Moore) said he was on a vacation, the first one in some time. He was going to the country in a hurry." He told Mrs. Sydnor, wife of a former sheriff of Henrico county, that he "was going very fast up the street and was on his vacation. He was going so fast that he couldn't stop."

John Terry, a colored pantry boy, said that his attention was attracted by the sound of skidding tires and that the car was then going from forty to forty-five miles an hour. George Walker, the bellboy, said that there were skid marks in the street "right across the middle of the street" which "began right at a traffic sign going west, a west traffic sign at the door." This witness said that as Scott fell "he was lying by a manhole on the other side of Main street." Terry

said that he was lying near this manhole "betwixt the four car lines." This is in substance the plaintiff's case.

Mrs. Moore said that their car was going very slowly, probably about seventeen miles an hour, that Doctor Scott left the sidewalk, walking rapidly, that she called to her husband to "look out for that crazy man" who "snapped into our car without looking." As he fell he lay about ten feet from the north curb of Main street. Mr. Bloom, an employee of the National Cash Register Company, said that Moore was straddling the right street car track going west and was driving at moderate speed, that Scott was not looking and walked into the side of the Moore car.

This is Moore's account of the accident:

"I was going west up Main. I was following a sedan. How far I don't remember, but he pulled in to the hotel, west of the entrance to the hotel, and parked behind a machine that was parked right at the corner and stopped, and I saw him get out and I proceeded to go up and blew my horn. After he went around into the hotel I proceeded on. As soon as my engine passed the car parked in front my wife spoke, and Dr. Scott was into the car. I stopped as quick as I could (applied the brakes and blew the horn), then passed across the street in front of the car parked on the opposite corner, on the west side of Jefferson street, on the right hand side of Main."

He said that he was straddling the westbound rail and cut to the center to avoid collision. That Scott "walked into the side of my car," a sedan, and was struck by the right front door handle, which broke off.

An attached plat helps us to understand the foregoing statements and their bearing.

Scott's injuries were almost unbelievable. Broken beyond words, his recovery is a miracle, but if he stepped from the sidewalk into the side of the plaintiff's car without looking, and if that car was where it might have been expected and at proper speed, he has only himself to blame.

Counsel for Moore, with characteristic candor, con-

cedes that his client was negligent, but contends that Dr. Scott was also negligent as a matter of law. This, of course,

is an affirmative defense, and is the only defense here relied upon.

Time and again we have had occasion to consider the status of verdicts confirmed. In *Gaines* v. *Campbell*,

159 Va. 504, 166 S. E. 704, 708, we said: "When we come to consider facts which are the subject of sharp dispute, and have ascertained that a jury's verdict and a court's judgment find in the evidence substantial support, our task is at an end. It would be futile to discuss conflicts in detail when at the end we would have to admit that the verdict and judgment are controlling. It is only necessary to know that there is evidence sufficient to support the verdict." See, also, *Trant Motor Co.* v. *Jordan,* 145 Va. 334, 133 S. E. 657; *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Virginia Electric and Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329, 333.

Code, section 2145, paragraph 73, provides:

"(a)  The roadbeds of highways within cities and towns are primarily intended for vehicles, but pedestrians have the right to cross them in safety, and drivers of street cars and vehicles shall exercise proper care not to interfere with such rights nor to injure them or their property.

"(b)  When crossing highways or streets within incorporated towns or cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles and shall cross wherever possible only at intersections or crosswalks. Pedestrians in crossing any street at intersection with another street, shall at all times have the right of way over vehicles making right turns into street being crossed by such pedestrians.

"(c)  At such intersection where no traffic officer is on duty, pedestrians shall have the right of way over vehicles.

"(d)  This shall not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing."

In *Blunt's Case,* Gregory, J., after calling attention to the fact that reciprocal duties theretofore imposed had been changed by statute, said: "But since the enact-

ment of the statutes and ordinances here invoked the former general rule outlined above as to the measure of care required of both has been changed. The pedestrian, under such regulations, for his own protection, is required to exercise a greater degree of vigilance when he crosses a street between intersections. This is because the vehicle has the superior right there. On the other hand, the operator of a vehicle must exercise a greater degree of vigilance at an intersection because the pedestrian has the superior right there. While the rule of ordinary care (which is flexible) applies to both at all times, yet the measure of ordinary care which the operator of a vehicle must exercise at an intersection is greater and higher than the care a pedestrian must exercise. Likewise, at places in the street other than at intersections, where a pedestrian desires to cross, the ordinary care he is required to exercise is greater and higher than that required of the operator or driver of a vehicle. If this were not true, it would be useless to have the statutes and ordinances."

We have no intention of receding from any statement there made. The statute means what it says and is too plain to require construction. At this intersection there was no traffic officer and Scott was crossing where he should have crossed. He looked to the east as he stepped into the street and saw no moving automobile in the block. That, we have seen, is 265 feet long. If he walked at the rate of five miles an hour, which is about the limit of a man's speed, he would have reached the middle of the street, twenty and one-half feet distant, while the car which struck him went 265 feet or at the rate of over sixty miles an hour. He had the right to expect no such recklessness. If it be said that such speed is incredible we are to remember that traffic conditions tolerated in the city have become a matter of public reproach. Moreover, the defendant himself has said that he was going very fast, so fast that he could not stop. If Scott walked into the right side of this car he could not have fallen near the manhole unless he was

thrown over the car itself. He claims to have been struck from behind, and the character of his injuries tends to support that statement. It was the duty of Moore, with an unobstructed street ahead, to keep to the right. The street was unobstructed, no car was seen in the block. Scott had a right to rely upon the rule of the road which keeps traffic to the right.

As he stepped into the street he looked to his left as he should have looked. Was his failure to look again negligence as a matter of law? We think not.

*Heindl* v. *Perritt,* 158 Va. 104, 163 S. E. 93, is in principle quite like the case in judgment. There the accident occurred in the night-time. A judgment was sustained. Plaintiff was on a southbound Harrison street car which stopped at the Grace street intersection. He stepped from the right side of the street car, walked in front of it, started across Harrison street to its east sidewalk, and was struck as he reached its edge by a northbound automobile. As he started across Harrison street he looked and saw no car approaching, but did not look again. It will be observed that he was near the edge of the street when struck and that the car which hit him was traveling to the right as it should have traveled. Scott was in "the midst of the street car tracks," where, in the normal course of traffic, an automobile would not have been expected to be. The court called attention to the statute and to the fact that Perritt had the right of way, and that the Heindl car should have been under control as it approached the crossing, and held that Perritt was not guilty as a matter of law. *Ebel* v. *Traylor,* 158 Va. 557, 164 S. E. 721.

We have been referred to a number of cases which it is contended support a contrary conclusion. Among them is *Virginia Ry. & Power Co.* v. *Boltz,* 122 Va. 649, 95 S. E. 467. To begin with, this was a street car with a superior right of way on its own track. Mrs. Boltz undertook to cross in the block and not at a regular crossing. She was

walking down the street midway between the curb and the car track when she suddenly turned and stepped upon it.

*Stephen Putney Shoe Co.* v. *Ormsby's Adm'r*, 129 Va. 297, 105 S. E. 563, is a case in which a plaintiff, at a crossing, stepped immediately in front of an oncoming truck.

Another case is that of *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711. There the plaintiff, when he stepped from the sidewalk, saw a car approaching half a block away. He did not look again. All of these cases were decided at a time when the rights of vehicles and pedestrians were reciprocal. We have seen that this has been changed by statute. In cases cited the vehicle was where it might have been expected to be and in none of them was it so far away as to warrant a plaintiff in believing that he could proceed with safety.

Scott seems to have done what any ordinary man would have done. He looked to his left and the way seemed clear, but an automobile and a street car both were approaching from his right. Naturally he kept them under observation. Moreover, he was subject to this possible added peril. Some car might have cut in on him from Jefferson street going east. This also is to be remembered. According to his statement, when struck he had reached a zone of comparative safety.

Cases from elsewhere support the conclusions which we have here reached.

In *Deford* v. *Lohmeyer*, 147 Md. 472, 128 Atl. 454, 456, the court said: "Upon this theory as to the facts, the appellee had an equal opportunity to notice the automobile, but, having looked towards the south without seeing the car before she left the sidewalk, and hearing no signal of its approach, and being entitled to assume that her right of way as a pedestrian would be recognized, she could not properly be said to have acted with such manifest imprudence, in her effort to cross the street, as to justify a decision that she was guilty of contributory negligence as a matter of law."

That court had theretofore reached the same conclusion in *Merrifield* v. *C. Hoffberger Co.*, 147 Md. 134, 127 Atl. 500.

Maryland has a statute which gives to pedestrians at crossings the right of way. For the same reason the same conclusion was reached in New Jersey. *Minarcsik* v. *Blank,* 102 N. J. Law, 231, 132 Atl. 251.

In the late case of *Hecker* v. *Union Cab Co.,* 134 Or. 385, 293 Pac. 726, 727, the court said: "Even though plaintiff had seen the lights of the automobile when they were about half a block, or about one hundred fifty feet, away, would not warrant the court in holding, as a matter of law, that he was negligent. Plaintiff would have had the right, if he had seen an automobile approaching at such a distance, to assume that defendant would obey the law and yield the right of way to plaintiff. He was not required to remain on the south side of Hoyt street."

In *Edwards* v. *Kohn* (1932) 207 Wis. 381, 241 N. W. 331, 332, a statute like ours was under construction. The court said: "The contention in this behalf assumes that section 85.44 (1), providing that 'the operator of any vehicle shall yield the right of way to pedestrian crossing the highway within any marked or unmarked crosswalk at an intersection except at those intersections where the movement of traffic is being regulated by traffic officers or traffic control signals,' does not impose upon the driver of an automobile the absolute duty to yield the right of way, but only to use ordinary care in that behalf. Such is not the effect of safety statutes."

"The question as to whether a pedestrian, who is struck by an automobile or other motor vehicle, at or near a regular street crossing, or at a place customarily used as a crossing, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury." 2 Blashfield, Cyc. of Automobile Law, page 1020.

In *Pierce* v. *Armour & Co.,* 226 App. Div. 393, 235 N. Y. S. 532, 533, the court, after discussing the conflicts in evidence as to the pedestrian's outlook, said: "It may be that he has testified falsely on this question and that he did not

look at all, but the fact does remain that he had reached a place of reasonable safety at the time he was struck, and it was for the jury to say whether this lack of vigilance and care in crossing half the street ahead of this truck which should have kept to the right, was a proximate cause of the accident."

In *Fagan* v. *Ohler*, 112 Conn. 667, 153 Atl. 778, 779, we find the facts not unlike those in the instant case. The court said: "The jury might reasonably have found from the evidence that when the plaintiff had reached a point a little more than half way across the street he paused and looked to his right to watch for an opportunity to cross between the cars proceeding in an easterly direction along the southerly side of the street; * * *." Just as they might believe here that Scott when about the middle of the street, deeming himself safe from westbound traffic, looked only for that which flowed to the east.

Because Scott did look to the east and saw no car which could in reason reach him, and because he had passed from the orderly line of traffic into a zone of comparative safety, and because of the statute in such cases made and provided, we are of opinion that he was not guilty of contributory negligence as a matter of law.

■ If Scott simply walked into this automobile when it was where it should have been, he could not have been thrown anywhere near the manhole. It is true that he was struck by the right side of the car and that a door handle was broken off, but there is evidence to show that the car itself was in the street car tracks. If there, it might suddenly have turned to the left. Indeed Mr. Moore said that he turned to the left. This sudden turn would have brought the right-hand side of the car into contact with the plaintiff and may have thrown him where his evidence says that he was thrown. Scott, as we have seen, tells us that he was struck from behind. All of this was for the jury.

We find no error in the record. The judgment appealed from is affirmed.

*Affirmed.*