# Staunton

## H. M. Lucas v. Iola F. Craft.

September 21, 1933.

Present, All the Justices.

The opinion states the case.

*W. Shepherd Drewry,* for the plaintiff in error.

*Donald W. Shriver,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Under review is a judgment for the plaintiff who was run down and hurt by defendant's automobile.

That accident occurred at the intersection of Boush and York streets in the City of Norfolk. They cross each other at right angles. Boush street runs north and south and York street east and west. On the afternoon of July 27, 1931, Miss Iola F. Craft, a teacher by profession, boarded a bus coming south on Boush street. That bus was followed by another passenger bus which in turn was followed by a truck loaded with brick owned by the defendant, H. M. Lucas, and driven by his servant. Miss Craft's bus stopped by the bus stop station at said intersection, which station is on the west side of Boush street. Its south end is flush with the north side of York street. After getting off she walked around the front end of the bus and started across Boush street, intending to go to the Medical Arts building, which is on the northeast corner of these streets. As she passed her bus she looked to her left, which was north on Boush street, and saw nothing to indicate that it was not clear of approaching traffic. There was, however, a car coming east on York street—"there was an automobile coming from York street into Boush and I kind of halted myself for the car to pass and as I did the car struck me." Mr. Brackett said: "I saw Miss Craft standing in the middle of the street and the truck bearing down on her." Estimates as to how far she had gone past her bus vary, but we think it may fairly be said that she was about the middle of Boush street when the accident occurred. The truck horn was out of repair and so was not sounded,

and she says that she was unaware of its approach until the moment of impact.

We have seen that when her bus came down Boush street it was followed by another bus. When the first bus stopped at the bus station the following bus stopped in its rear, and since Miss Craft did not see the truck it is fair to assume that it was following bus No. 2 and was then obscured from vision by it.

For any truck to run down a woman standing in the middle of an open street is almost necessarily negligence. Miss Craft was where she had a right to be. When she passed her bus she looked to the left and saw the way was clear, but she did see an automobile approaching and swinging to the right from York into Boush street. She did what any other prudent person would have done, "kind of halted" to see just how far this approaching car would swing out, for it is matter of common knowledge that cars in executing this movement do sometimes swing farther than they should.

Since we are dealing with a verdict and judgment it is plain that the evidence is sufficient to sustain it. We cannot as a matter of law say that the defendant was not guilty of negligence, and we cannot as a matter of law say that the plaintiff was guilty of contributory negligence.

At the conclusion of the plaintiff's evidence, and again after all evidence for both parties had been introduced, the defendant moved the court to strike out the plaintiff's evidence on the ground that she had failed to prove actionable negligence on the part of the defendant and was, according to her own testimony, guilty of contributory negligence as a matter of law. After the verdict the defendant moved the court to set aside the verdict on these grounds. Both motions were overruled. The trial court was right.

Errors are assigned because of instructions given and refused.

This is plaintiff's instruction No. 2:

"The court instructs the jury that if you find from the evidence that Iola Craft started across Boush street at the intersection of York street before the truck of the defendant reached the intersection of Boush and York streets, you are instructed that she had the right of way over the said truck, and it was the duty of the driver of the same to either change his course, slow down, or come to a complete stop if necessary to permit the plaintiff to safely and expeditiously make the crossing, and if you find that on the occasion in question the plaintiff was exercising due care for her own safety and that the driver of the defendant's truck disregarded his duty as above set out, and that the same was the proximate cause of the plaintiff's injury, you must find for the plaintiff."

Exception was taken to this for these reasons: "This instruction assumes that the defendant saw the plaintiff before or at the time she was leaving the sidewalk when from all of the evidence this was impossible because the plaintiff herself as well as her witnesses testified that she could not see the truck and that this would of necessity corroborate the defendant's testimony that the driver of the truck could not see the plaintiff until she stepped beyond the bus."

All evidence is to the effect that the truck was going slowly, that the brakes were applied before the plaintiff was struck, and that it moved only two or three feet after the impact. The evidence of the truck driver is that Miss Craft "popped out" from the front of her bus into the path of his truck and that he did not know and could not have known of her presence at a time when it was possible to have avoided a collision.

Our statute defines the relative rights of pedestrians and motor vehicles at street crossings; it reads:

Acts 1926, ch. 474, section 73, as amended by Acts 1928, ch. 399, p. 1025:

"(a) The roadbeds of highways within cities and towns are primarily intended for vehicles, but pedestrians have the right to cross them in safety, and drivers

of street cars and vehicles shall exercise proper care not to interfere with such rights nor to injure them or their property.

"(b) When crossing highways or streets within incorporated towns or cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles and shall cross wherever possible only at intersections or cross-walks. Pedestrians in crossing any street at intersection with another street, shall at all times have the right of way over vehicles making right turns into street being crossed by such pedestrians.

"(c) At such intersection where no traffic officer is on duty pedestrians shall have the right of way over vehicles.

"(d) This shall not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing." Code, section 2145 (73).

This instruction does not assume that the truck driver saw the plaintiff before or at the time she was leaving the sidewalk. It does say that she had the right of way. There was no traffic officer on duty and she did have the right of way and it was the truck driver's duty to change his course, slow down, or come to a complete stop if necessary to permit her passage in safety. The truck driver knew that the bus had stopped at a station stop and he should have known that it probably stopped to let off passengers who might intend to cross one of these intersecting streets. He also knew that if she intended to cross Boush street she could not be seen until she had cleared her bus. And so it was his duty, when he turned out to pass the stationary buses ahead, to remember this possibility.

The language and intent of the General Assembly is so plainly expressed in the statute that it needs no interpretation or construction. It means what is

said. At intersecting streets where there are neither traffic lights nor traffic officers, the pedestrian has a superior right—that is, the right to cross from one side of the street to the other in preference or priority over vehicles—and drivers of vehicles must respect this right and yield the right of way to the pedestrian. The pedestrian's right of way extends from one side of the street to the other. It does not begin at any particular point in the intersection nor does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing. It is impossible, without nullifying the statute, to divide this right of way into different stages in the intersection, yielding the right of way to the pedestrian at one point in the intersection and denying it at another, all at the time of negotiating the *one* crossing.

Instruction 2 properly told the jury how to apply this statute to the evidence in this case. It was plain, and no doubt the jury followed it, and upon it found against the defendant. We have no power to disturb that finding upon the point in question.

Any other conclusion would make the statute of little value. *Heindl* v. *Perritt,* 158 Va. 104, 163 S. E. 93; *Virginia E. & P. Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329; *Ebel* v. *Traylor,* 158 Va. 557, 164 S. E. 721; *Moore* v. *Scott,* 160 Va. 610, 169 S. E. 902, and *Sawyer* v. *Blankenship,* 160 Va. 651, 169 S. E. 551, decided at the late term of this court at Wytheville.

We follow these cases decided since our statute went into effect and not those which antedate it. *Moore* v. *Scott, supra.*

This instruction was given at the instance of the plaintiff:

"INSTRUCTION No. 3.

"The court instructs the jury that a person lawfully on a public street may rely on the exercise of reasonable care by the drivers of automobiles and trucks to avoid

injury, until the contrary appears or in the exercise of ordinary care should appear, and that the plaintiff, Iola F. Craft, in attempting to and in crossing Boush street was not required as a matter of law to continuously look or listen for the approach of automobiles thereon, but she is under the duty of using reasonable care for her own safety under all circumstances, and if the jury believe from the evidence that the defendant was operating his truck on said street in a careless and negligent manner, and that the direct and proximate cause of the plaintiff's injury was such careless and negligent conduct on the defendant's part, and that the plaintiff was not guilty of negligence contributing to her injury, then the jury should find for the plaintiff."

It was excepted to "upon the ground that it was the duty of the plaintiff to continuously look and listen where looking and listening would be effective and that she cannot relieve herself of her negligence by the failure of this duty on her part; and upon the further ground that the instruction assumes and charges too high a degree of care on the operator of an automobile."

We are unable to see where it charges against a chauffeur an extraordinary degree of care. We have already considered that degree of care with which he is justly charged. It is said in substance that the court should have told the jury that it was Miss Craft's duty to continue to look and listen. Presumably, it is meant that she should have continued to look to the left and listen.

All instructions should be read in the light of the evidence to which they apply. We have seen that when she passed the front of her bus she did glance to the left and saw that the way was clear. Brackett says that when she was struck she was standing in the middle of the street, and she tells us that she had halted on account of that automobile which was turning from York street into Boush street.

In *Moore* v. *Scott, supra,* attention was called to the fact that the middle of the street is a zone of com-

parative safety. Ordinarily cars may be expected to pass to its right and left. Certainly it is the duty to look in one direction as well as in the other. In the instant case a car was swinging towards her and prudence required that she look to it as well as down a street which had appeared to her just a moment before to be clear. In such circumstances she was not required as a matter of law to look continuously to the left. *Heindl* v. *Perritt, supra.*

The defendant tendered instruction No. 2, which was rejected by the court as tendered but was amended by it and given. The words italicized show what these amendments were:

"The court instructs the jury that the defendant had a right to assume that the plaintiff would not leave a place of safety and walk directly in front of a standing bus and into the path of the defendant's moving automobile; *until the contrary appears or by the exercise of ordinary care should appear,* that the plaintiff is required to use the same degree of care as an ordinary prudent person would use, and if you believe from the evidence that the conduct of the plaintiff was not such as a person of ordinary care and prudence would use under the same similar circumstances, then the plaintiff was guilty of negligence and cannot recover of the defendant in this case, *unless the defendant in the exercise of ordinary care had the last clear chance to avoid the accident, as explained in other instructions.*"

To this instruction as given the defendant objected "upon the grounds hereinabove assigned."

Just what was meant by this is not clear but we will assume that he objected to the injection of the doctrine of the last clear chance into the case. This instruction, as tendered, told the jury that she could not recover if she was guilty of contributory negligence. The theory of the plaintiff was that she was guilty of no negligence at all, but the court by its amendment said that even though she were guilty of negligence that would not preclude a

recovery if the defendant saw or ought to have seen her position of peril in time to have avoided the accident.

There is evidence tending to show, as we have seen, that when struck, she was well out into the street, and had halted to watch the car approaching her from York street. When the truck came from behind the waiting buses it was going slowly, and if she had reached that point where her evidence tends to place her, a jury might have believed that there was still time in which to avoid an accident even though she had in fact been negligent. At the most she was but in a state of negligence (*Bassett & Co.* v. *Wood*, 146 Va. 654, 132 S. E. 700), and the failure of the truck driver to act was the proximate cause of her injury.

If the failure to stop was due to defective brakes, then the driver had no last clear chance; the accident was not due to the failure of the driver to act, but to some defect in the car. Such a defect would be evidence of primary negligence, while the driver, however alert, might be powerless to stop his car. He would have had no chance to do so, clear or otherwise. *Gordon's Adm'r* v. *Director General,* 128 Va. 426, 104 S. E. 796; *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711. But the driver made no such claim. The emergency brakes were in good order, the foot brakes not so good. He said that after he applied the brakes "she rolled I guess about a foot or two," and Driscoll, a defendant's witness, said: "He stopped that truck quicker than I ever seen anybody stop before." If the car only rolled a foot or two after the brakes were applied it could have been stopped in time had the driver been looking. Certainly a jury would have been warranted in so finding.

We say again that those rules which applied before the statute was enacted and when the rights of pedestrians and vehicles at crossings were co-equal, now have little application. Equally inapplicable are cases which deal with "jay-walkers" or those who cross in a block and not at a recognized street intersection. At established cross-

ings where there is no traffic officer, pedestrians have the right of way.

There is no error in the judgment appealed from and it is affirmed.

*Affirmed.*

Epes, J., concurring.

I concur in the view taken in the opinion of the court that the court did not err in refusing to strike out the evidence, and also for the reason below given, in the judgment of the court.

Section 6365, Code Va. 1919, provides that "a civil case shall not be remanded for a trial *de novo* except where the ends of justice require it," and that the appellate court "shall render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice." The evidence upon the right of the plaintiff to recover seems to have been fully developed by both parties; and I see no error which the court committed which had any bearing upon the amount of the verdict. Though the evidence does not establish as a matter of law the plaintiff's right to recover, the intrinsic weight and preponderance of the evidence supports her right to recover. This being true, acting in pursuance of section 6365, I concur in the judgment of the court, notwithstanding the fact that I think the court committed prejudicial error in giving the instructions designated by it as Nos. 2 and 6.

I shall try to make clear my objections to these instructions, though it is somewhat difficult to make the full force of them felt without a somewhat fuller statement of the evidence than is contained in the opinion of the court.

The court gave eight instructions, which we shall designate as instructions 1, 2, 3 and 4, and instructions A, B, C and D. Instruction 4 related to the measure of damages, was not excepted to, and need not be noticed further. The other instructions given read as follows:

1. "The court instructs the jury that one driving an automobile along a public street is charged with the duty of keeping a proper lookout, and if you find from the evidence that the defendant failed in this duty, and that such failure caused the injury to the plaintiff, Iola Craft, without negligence on her part and while she was exercising reasonable care for her own safety, you must find for the plaintiff."

2. "The court instructs the jury that if you find from the evidence that Iola Craft started across Boush street at the intersection of York street before the truck of the defendant reached the intersection of Boush and York streets, you are instructed that she had the right of way over the said truck, and it was the duty of the driver of the same to either change his course, slow down, or come to a complete stop if necessary to permit the plaintiff to safely and expeditiously make the crossing, and if you find that on the occasion in question the plaintiff was exercising due care for her own safety and that the driver of the defendant's truck disregarded his duty as above set out, and that the same was the proximate cause of the plaintiff's injury, you must find for the plaintiff."

3. "The court instructs the jury that a person lawfully on a public street may rely on the exercise of reasonable care by the drivers of automobiles and trucks to avoid injury, until the contrary appears or in the exercise of ordinary care should appear, and that the plaintiff, Iola F. Craft, in attempting to and in crossing Boush street was not required as a matter of law to continuously look or listen for the approach of automobiles thereon, but she is under the duty of using reasonable care for her own safety under all circumstances, and if the jury believe from the evidence that the defendant was operating his truck on said street in a careless and negligent manner, and that the direct and proximate cause of the plaintiff's injury was such careless and negligent conduct on the defendant's part, and that the plaintiff was not

guilty of negligence contributing to her injury, then the jury shall find for the plaintiff."

(a) "The court instructs the jury that if they believe from the evidence that the plaintiff, without looking or listening, negligently walked, or stepped or ran from the front of the standing bus, and place of safety, on Boush street, in front of the automobile of the defendant, without warning to the defendant, or without giving the defendant sufficient time to stop or avoid the plaintiff, then you should find for the defendant."

(b) "The court instructs the jury that if the plaintiff expects to recover upon the theory that after her danger became known to the defendant, or by the exercise of ordinary care could have become known to the defendant, and that thereafter he failed to exercise care to try to avoid the plaintiff, then you are instructed, in determining this question, that the law recognizes that the minds and nerves and muscles of men are not so accurately co-ordinated as to permit of instantaneous action to meet an emergency, and in order for the plaintiff to recover upon this theory, she must prove by the preponderance of all the evidence, that after the driver of the defendant's car knew, or by the exercise of ordinary care could have known of the danger in which the plaintiff was, and that thereafter he had ample space, both of time and distance in which to stop the truck and avert the accident, and that he negligently failed to do so, otherwise the plaintiff cannot recover upon this theory."

(c) [1]"The court instructs the jury that the defendant had a right to assume that the plaintiff would not leave a place of safety and walk directly in front of a standing bus and into the path of the defendant's moving automobile; *until the contrary appears, or by the exercise of ordinary care should appear,* that the plaintiff is re-

---

[1] This instruction is designated in the opinion of the court as defendant's instruction No. 2, as amended by the court.

quired to use the same degree of care as an ordinary prudent person would use, and if you believe from the evidence that the conduct of the plaintiff was not such as a person of ordinary care and prudence would use, under the same or similar circumstances, then the plaintiff was guilty of negligence and cannot recover of the defendant in this case, *unless the defendant in the exercise of ordinary care had the last clear chance to avoid the accident, as explained in other instructions."* (Italics mine.)

(d) "The court instructs the jury that the basis of this action is negligence and you cannot infer negligence on the part of the defendant from the mere happening of an accident. The law imposes on the plaintiff the duty of proving her case by the preponderance of all the evidence, and this burden rests upon her throughout the entire trial and applies at every stage thereof, and you cannot, under your oaths, find a verdict in favor of the plaintiff unless and until she has proved by the preponderance of all the evidence that the defendant was guilty of the negligence charged against him, and that such negligence was the proximate cause of the injury complained of.

"If, after hearing all of the evidence, you are uncertain as to whether the defendant was guilty of negligence, and it appears equally as probable that he was not negligent as that he was, then your verdict must be for the defendant.

"Even should you believe from the evidence that the defendant was negligent, yet, if you should also believe from the evidence that the plaintiff was also negligent, and that such negligence was a concurring cause of the accident, you must find for the defendant, and this is also true if you should believe that the defendant was more negligent than the plaintiff."

Instructions 1, 2 and 3 were given at the request of the plaintiff, 2 and 3 being given over the objection of the defendant.

Instructions A and D were given at the request of the defendant. Instruction C was offered by the defendant without the words which we have placed in italics. The court refused to give it in the form offered. Over the objection of the defendant it modified it by the insertion of the italicized words, and gave it as amended. The defendant objected and excepted to the giving of the instruction as so amended. When this objection was overruled, the defendant then tendered instruction B, which the court gave. Neither instruction B nor any instruction similar to it was requested by the defendant until after the court had ruled that it would submit the question of the last clear chance to the jury by its amendment of instruction C.

The objections made by the defendant to instruction 3 were: (1) That this instruction disregards the fact "that it was the duty of the plaintiff to continuously look and listen where looking and listening would be effective, and that she cannot relieve herself of her negligence by the failure of this duty on her part." (2) "The instruction assumes and charges too high a degree of care on the operator of the automobile." I concur in the opinion of the court that these objections to this instruction were not well made.

The objections made by the defendant to instruction 2 were "that this instruction assumes that the defendant saw the plaintiff before or at the time she was leaving the sidewalk, when, from all of the evidence, this was impossible because the plaintiff herself, as well as her witnesses, testified that she could not see the truck; and that this would of necessity corroborate the defendant's testimony that the driver of the truck could not see the plaintiff until she stepped beyond the bus."

Instruction 2 is erroneous, I think, in several particulars, one of which was sufficiently pointed out by the defendant in the objection made by him.

The statutory provisions regulating the relative rights and duties of pedestrians and drivers of automobiles at

street intersections, which were in force at the time of the accident, are found in Definitions, subd. x, page 767, and section 73, subds. a-d of ch. 474, Acts 1926, as amended by Acts 1928, ch. 399, p. 1025, and are quoted in the footnote.[2]

As the statute itself points out, and as has been recognized by this court in *Heindl* v. *Perritt,* 158 Va. 104, 163 S. E. 93; *Virginia E. & P. Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329, and *Ebel* v. *Traylor,* 158 Va. 557, 164 S. E. 721, these statutory provisions are intended to be, and in practical applicaton must be, construed in the light of the rule of reason. And it is my view that the court should apply the rule of reason to the statute in instructing the jury, and not content itself with instructing the jury in the language of the statute, relying upon the jury to apply the rule of reason to the construction of the instructions.

I think these provisions of the statute do not give a pedestrian the right of way at street intersections under any and all conditions. In the language of the statute, they do "not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic." I think it is not true that a pedestrian acquires or has the right of way merely because he "starts across" before an approaching automobile reaches the intersection. There are other facts which are essential to the acquisition of the right of way by the pedestrian—for instance, the dis-

---

[2] Acts 1926, ch. 474, Definitions, subd. x: "'Right of way.'—Shall mean the right of a pedestrian, or vehicle to proceed uninterruptedly in a lawful manner, in preference or priority to another pedestrian or vehicle approaching in another direction."

Acts 1926, ch. 474, section 73, as amended by Acts 1928, ch. 399, p. 1025 (Code 1930, section 2145 (73):

"(a) The roadbeds of highways within cities and towns are primarily intended for vehicles, but pedestrians have the right to cross them in safety, and drivers of street cars and vehicles, shall exercise proper care not to interfere with such rights nor to injure them or their property.

"(b) When crossing highways or streets within incorporated towns or cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles and shall cross wherever possible only at intersections or cross-walks. Pedestrians in cross-

tance the approaching automobile is from the street intersection, the speed at which it is approaching, the opportunity of the driver of the automobile to see or otherwise apprehend that the pedestrian will, or probably intends to, cross in front of him.

In the instant case the buses standing along the curb obscured the pedestrian from the vision of the driver of the automobile approaching on the street which she intended to cross until she had. advanced into the street some distance. Under such conditions, it seems to me that a pedestrian cannot acquire the right of way against the approaching automobile *until* he has reached a point where the driver can, by keeping a reasonable lookout, see or ought to see or apprehend that the pedestrian will, or probably intends to cross the street in front of his car.

But when the pedestrian has reached a point where he may acquire the right of way, he still does not have the right of way under all conditions. I think he does not then acquire the right of way against an approaching automobile if the conditions are such that a reasonably prudent person, driving the approaching automobile at a reasonable and lawful rate of speed, with his brakes and other driving equipment in reasonably good order, and keeping a reasonable lookout, cannot reasonably be expected to be able with due regard for the safety of himself and others, and *without taking emergency steps,* to change his course or slow down sufficiently, or to stop

---

ing any street at intersection with another street, shall at all times have the right of way over vehicles making right turns into street being crossed by such pedestrians.

"(c) At such intersection where no traffic officer is on duty pedestrians shall have the right of way over vehicles.

"(d) This shall not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing."

Acts 1932, ch. 342, p. 613, enacting the Motor Vehicle Code of Virginia, repealed the acts of 1926 and 1928; but re-enacted the above quoted provisions of section 73 without change. It omits, however, the definition of "right of way."

in time to avoid injuring the pedestrian, after the driver
has seen, or ought to have seen, or otherwise apprehended,
that the pedestrian will or probably intends to cross the
street. In my opinion, under such conditions the auto-
mobile has the right of way, though of course he may
be guilty of negligence in attempting to exercise it, or in
the way in which he exercises it.

Further, I think that after the pedestrian has acquired
the right of way, the duty of the driver to change his
course, or to slow down sufficiently, or to stop in time to
avoid striking the pedestrian, is not the absolute duty of
an insurer. His duty is to use *reasonable and ordinary
care,* under all the surrounding facts and circumstances,
with due regard to the safety of others, to change his
course, slow down or stop, if necessary, in order to avoid
injuring the pedestrian. Generally the fact that the fail-
ure to perform this duty was due to the antecedent neg-
ligence of the driver in not having his automobile equip-
ped with proper brakes or other driving equipment is
to be considered as an element of, and may constitute the
very gist of, the negligence chargeable to him in not per-
forming this duty. But, as I shall hereafter point out,
when the plaintiff is guilty of contributory negligence,
and recovery must be had, if at all, under the rule of the
last clear chance, a recovery cannot be predicated upon
such antecedent negligence of the driver. All that the
rule of the last clear chance requires is the use of the
means *then* available.

I think instruction 2 ignores (except in an obscure and
inadequate way by an implied reference to the instruc-
tions on contributory negligence) the uncontradicted evi-
dence of the plaintiff's own witnesses, which requires the
inference that when Miss Craft "started across" Boush
street she was obscured from the vision of the truck
driver, and remained obscured from it until she had
passed in front of the Edgewater bus and emerged to
the east of it. It also ignores I think (except in the
same obscure and inadequate way) the testimony of de-

fendant's witnesses to the effect that the truck was very near the intersection when Miss Craft emerged into the line of vision of the truck driver, and that the driver brought his truck to a stop "quicker than you have ever seen anybody stop before." The result is, I think, that it incorrectly instructs the jury upon the issue, who had the right of way, and directs a verdict for the plaintiff upon a partial and inadequate view of the evidence, and upon a statement of facts which does not adequately set out all the facts essential to support such a verdict.

In the view which I take of the law, the pertinent question in this case was, "Where was the truck when Miss Craft emerged into the line of vision of its driver? Not where was it when she "started across" Boush street?

Instruction 2 patently relates primarily to the issue as to the original primary negligence of the plaintiff. When it is analyzed, it is seen that it is composed of three parts: (1) It purports to tell the jury all that it need believe to have been proven to find that the plaintiff had acquired the right of way. (2) Next it purports to tell the jury what duty rested upon the defendant's driver, if it finds the plaintiff had the right of way. (3) It then concludes, *"if you find that on the occasion in question the plaintiff was exercising due care for her own safety* and that the driver \* \* disregarded his duty as above set out and that the same was the proximate cause of the plaintiff's injury, you must find for the plaintiff."

Instruction 3, A and C are potently intended to instruct the jury on contributory negligence and not on primary negligence. If the words italicized in instruction 2 are borne in mind, perhaps a legally trained mind would come to the conclusion that notwithstanding the apparently plain statement to the contrary in instruction 2, the court intended the jury to understand from it and instructions 3, A and C read together that the plaintiff could not have acquired the right of way, if at all, until she emerged to the east of the bus into the line of vision of the truck driver; and that then the duty of the driver

was to use reasonable and ordinary care under all the surrounding facts and circumstances, with due regard to the safety of others, to change his course, slow down, or stop, if necessary, to permit her to cross in safety. But jurors are not presumed to have such legal perspicuity, nor is it their proper function to correct a positively erroneous statement of the law in one instruction by resort to their analysis of other instructions. "While omissions in one instruction or set of instructions may sometimes be supplied by a fuller statement in one or more other instructions, where it would not confuse or mislead the jury, it is rare, if ever, that positive error can be so corrected. A material error in an instruction, complete in itself, is not cured by a correct statement of the law in another instruction, as it is said that it cannot be told by which the jury were controlled. Hence, in such case, the verdict will be set aside, unless the court can see from the whole case that no other verdict could have been properly found." Burks, J., in *Reliance Life Ins. Co.* v. *Gulley,* 134 Va. 468, 483, 114 S. E. 551, 556. See, also, *Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874, 906, 156 S. E. 429; *Sun Life Ins. Co.* v. *Bailey,* 101 Va. 443, 449, 44 S. E. 692.

The objection made by the defendant to the giving of instruction C, which the court had amended so as to tell the jury that it could find a verdict for the plaintiff under the rule of the last clear chance is also, I think, well made. The evidence in this case did not, in my judgment, warrant the giving of an instruction based upon the theory that the defendant's driver had the last clear chance to avoid the accident.

The rule of the last clear chance is predicated upon there having been (1) negligence on the part of the person who invokes it and (2) *subsequently* occurring negligence upon the part of the person against whom it is invoked. Except under such conditions it has no application.

In the application of the rule only such negligent acts

or omissions are to be considered as become chargeable to the person against whom it is involved *after* he knows, or ought by keeping a reasonable lookout to have known, that the other party is in a situation of peril of which he is unconscious or from which he cannot extricate himself by the exercise of ordinary care on his part. When the rule of the last clear chance begins to operate,[3] all antecedent negligence of both parties goes out of the case, and the sole question then is: Did the party against whom it is invoked *thereafter* fail to use reasonable and ordinary care to avoid the injury with the means then available to him? Where the defendant, after he discovered, or ought to have discovered, the peril of the plaintiff, has used reasonable and ordinary care to avoid the injury by the use of such means as are *then* available to him, a recovery cannot be had under the rule of the last clear chance because of his antecedent negligence in having failed to provide himself with the means which might or would have enabled him to avoid the injury after he discovered the peril of the plaintiff. *Gordon's Adm'r* v. *Director General,* 128 Va. 426, 437, 104 S. E. 796; *Barnes* v. *Ashworth,* 154 Va. 218, 247, 153 S. E. 711; *Bujnak* v. *Conn. Co.,* 94 Conn. 468, 109 Atl. 244, 245; *Alexander* v. *St. L.-S. F. Ry. Co.,* 327 Mo. 1012, 38 S. W. (2d) 1023, 1026; *Millhouser* v. *Kansas City, etc., Co.* (Mo. Sup.) 55 S. W. (2d) 673; *Collins* v. *Crimp,* 91 Mont. 326, 8 Pac. (2d) 796, 797; *Atchison, T. & S. F. Ry. Co.* v. *Taylor,* 116 C. C. A. 440, 196 Fed. 878, 880; *Illinois Cent. R. Co.* v. *Nelson,* 97 C. C. A. 331, 173 Fed. 915, 917; *Lachance* v. *Myers,* 98 Vt. 498, 129 Atl. 172.

In *Bujnak* v. *Conn. Co., supra,* after stating when the doctrine of the last clear chance begins to operate, the court says: "It is from that moment that the inquiry involved in the application of the so-called last clear chance doctrine begins. It is not concerned with earlier

[3] See *Barnes* v. *Ashworth,* 154 Va. 218, 245, 153 S. E. 711, as to when rule of the last clear chance begins to operate.

happenings or conditions, but only those then existing or subsequently arising, and it is upon them, and them alone, that the determination of the question involved is dependent. * * It is important that this be constantly borne in mind * * in any attempt to make a practical application of the last clear chance principle. Otherwise the place which contributory negligence holds in our law is lost sight of."

In *Alexander* v. *St. L.-S. F. Ry. Co., supra,* the Supreme Court of Missouri disapproves and overrules some earlier Missouri cases which squint at a view contrary to that above expressed, and says: "The ruling that the antecedent negligence of a defendant may be taken into consideration in determining whether he was negligent under the humanitarian rule, would in many cases permit an unwarranted recovery for primary negligence through the elimination, under the guise of that rule, of the defense of contributory negligence."

In the instant case the evidence shows conclusively that, after the defendant's driver saw or ought to have seen the plaintiff's peril, he did not sound his horn because it was out of order, and tends to show that he was not able to stop the truck because its foot brakes were not in good condition. But no recovery can be had *under the rule of that last clear chance* because of failure to have a horn that would sound and adequate foot brakes. These acts of negligence were committed antecedent to the time that the rule of the last clear chance could have become operative. The absence of a proper horn and foot brake constituted a condition which could not have been removed after the last clear chance, if any, occurred. When this is borne in mind, it seems to me to be plain that the evidence is not sufficient to support a finding that the truck driver, *after* he saw or ought to have seen the plaintiff's peril, did, or omitted to do, anything that a reasonable prudent person in the exercise of reasonable care would or should have done, or omitted to do, in order to avoid injuring the plaintiff.