# Richmond

MONROE HOBSON MCBRIDE V. FIRST NATIONAL BANK OF DANVILLE, ETC.

April 28, 1938.

Present, All the Justices.

The opinion states the case.

*Aiken, Sanford & Johnson,* for the plaintiff in error.

*Harris, Harvey & Brown,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is another of the numerous automobile accident cases that find their way to this court. The accident happened between 5:30 and 6:00 o'clock on Saturday evening, December 12, 1936. It was dark, foggy and raining and the visibility was poor. The plaintiff in error, who will hereafter be called the defendant, was driving a new Plymouth sedan. The decedent, Harry Burns Trundle, was en route to his home from his office. He traveled on a bus to a point on Main street, in the city of Danville, near the intersecting street from the right called Chestnut Place. There he alighted when the bus stopped at its regular stopping place and he proceeded across Chestnut Place up the sidewalk, on the northern side of Main street, westwardly toward what is known as Chestnut street, on which he lived.

The contention of the plaintiff, the bank, is that Mr. Trundle continued walking on the sidewalk to the intersection of Chestnut street, where he attempted to cross Main street at the accustomed or natural place for pedestrians to make the crossing. The defendant urges that, on the contrary, the decedent left the sidewalk between the intersections of Chestnut Place and Chestnut street and attempted to cross Main street diagonally. We think this is the crucial factual point in the case. Mr. Trundle, while crossing Main street, wherever it was, was struck by the defendant's automobile and knocked down, receiving injuries, which caused traumatic pneumonia, from which he died in a few days.

There have been three trials of this case in the trial court. In the first trial the court struck out all of the evidence, which was equivalent to the direction of a verdict for the defendant, which, of course, the jury found. While the case was still in the breast of the court, the judge informed the parties, through their counsel, that he was not satisfied with the court's action in striking the evidence and that, before entering judgment on the jury's verdict, or setting it aside, he desired to hear argument of counsel. This was had and the court rescinded its former action, set aside the verdict and granted the plaintiff a new trial on the ground that he thought that it was a case for a jury to pass upon. Upon the second trial the jury failed to agree and it was discharged by the court and a new trial directed.

The third trial resulted in a verdict for the plaintiff, fixing the damages at $7,500, which was confirmed by the court. This, of course, entitles the plaintiff to have all conflicts in the evidence resolved in its favor. It is entitled to have the facts stated and considered in the light most favorable to itself where there are conflicting interpretations.

The defendant was proceeding west on Main street, which was the same direction in which Mr. Trundle was going. The defendant's automobile was behind the bus from which Mr. Trundle alighted, and the defendant's companion, Atkinson, who was riding in the car on the front seat with him,

said that he saw it. A street car, which was ahead of the defendant, stopped at the safety zone near Chestnut Place to discharge passengers. The defendant passed this street car on its right and then ahead of him was a large slowly moving van. He described the rear end of this van as "staring" him in the face. He then turned to the left to pass around the van when he struck Mr. Trundle, who had crossed the street to a point past its center.

The automobile struck Mr. Trundle on his left side and he fell near the left-hand rail of the downtown street car track. We think that the weight of the testimony is to the effect that Mr. Trundle was struck while he was crossing Main street, in going to the southeastern corner of Main and Chestnut streets, when he had reached a point beyond the center of Main street and near the center of the downtown street car tracks. The evidence tends to show that he was struck by the automobile as it was traveling in a diagonal direction to get around the van. The fact that he was struck on his left tends to the conviction that he was walking in very nearly a straight course. He may have veered somewhat from such a course when he realized that an automobile was bearing down upon him. Undoubtedly, the defendant's car was very near the slowly moving van, so near that it obscured his view of Main street ahead of the van. In all probability, it also obscured the vision of the decedent, looking downtown in the direction from which both the defendant's car and the van were moving.

The evidence strongly tends to show that the traffic was very congested, especially going uptown. One witness testified that there was a long line of traffic, particularly on the right-hand side going up Main street westwardly, which was the direction in which the defendant, the decedent and the van were all proceeding, and there was a car coming out of Chestnut street very near its intersection with Main street. The weight of the testimony, we think, tends strongly to show that the defendant cut out of the line of traffic so near to the intersection of Chestnut street that when he passed or was in the act of passing the van they were both

in the intersection. If that is so, it was in violation of the provisions of the statute and would be primary negligence. If it is a fact (and there is sufficient evidence of it—indeed, the defendant's own evidence is quite conclusive that the defendant was too close to this large moving van to see and note the street and traffic conditions ahead of it), then to cut out of the line in close proximity to the intersection, we think, was primary negligence.

Mr. Trundle was just sixty-one years old. He was in good health and his business and professional connections would suggest a man of a conservative and careful type, who would not, ordinarily, assume the hazard of breaking through a line of motor vehicle traffic on a foggy, dark night when it was raining and visibility very poor. This thought is accentuated by his declaration when he was in the hospital that his course from his alighting place from the bus was as usual, and his conviction that he was not in the wrong is patent from his question to the defendant, when he went to pick him up, which was why did he hit him.

It is true that Dr. Crumpler, a witness for the plaintiff, who saw the accident, said that Mr. Trundle was walking in the Chestnut street intersection diagonally toward him and he, the witness, was sitting in his automobile, with Miss Ragland, on the southwestern corner of the intersection. But this witness also testified that the decedent's face wasn't toward him as he was proceeding and that he was "aiming to go in the direction he was walking." The testimony of this witness was confused and not of great probative value on that account.

Miss Ragland, Dr. Crumpler's companion, testified that Mr. Trundle was struck while he was between Mrs. Hall's and Mrs. Boatwright's, fixing it at the dividing line between these properties, which would place the decedent very near to where he should have been, or quite so, if he were crossing the street properly.

Mrs. Hagedorn said that she saw there was some excitement down Main street and she went there from her garage on Chestnut street and saw them pick Mr. Trundle up "in

front of Sadie Hall's, in the middle of the street," and put him in the car, which moved off around Chestnut street.

Mr. Barber, who operated the street car that has been referred to, was asked by the defendant's counsel on cross-examination, if he had not told him that the accident occurred midway between the two intersections and the witness answered "No," and then he was asked the following question:

"Q. You did say it occurred well between the intersections, did you not?"

And his answer was:

"A. I told you I didn't know whether it occurred on the street car track or right in between the intersections. If you recall, when you called me over the telephone, I can tell you the answer I made. You asked me where it happened, and I said about the mouth of Chestnut street. Didn't you repeat it, after I told you over the telephone?"

We mention and emphasize these bits of the testimony to show that there is competent and reliable evidence upon which the jury could well have based their verdict.

This was in the mind of the learned and able judge of the trial court, who succinctly and cogently said as follows in an opinion, which is a part of the record:

"The evidence, considered in the light most favorable to the plaintiff, warranted the jury in finding:

"That decedent was struck by defendant's automobile at an intersection, where he had the right-of-way.

"That defendant was passing a moving vehicle at an intersection; and that he gave no signal by sounding his horn of his intent to do so.

"That defendant turned to his left to pass this moving vehicle; and that when he made the turn he was too close to the rear of it to enable him to keep a proper lookout along the right half of the street in front of him.

"That decedent was struck by the left-hand side of the front of defendant's automobile.

"That decedent was struck a short distance to the left of the center of the street—from two to five feet.

"That decedent got off a bus at the down-town right-hand corner of Main street and Chestnut Place; crossed Chestnut Place; walked up Main street, and at or near the space where the sidewalk lines along the easterly side of Chestnut street, projected, would intersect the northerly side of Main street, undertook to cross Main street in front of a slowly moving vehicle, and in close proximity thereto.

"That defendant stopped on the right-hand side of Main street, just below the down-town corner of Main street and Chestnut Place for a street car to discharge passengers; passed the street car to its right; then turned to the left to pass the large vehicle going up Main street. That this vehicle obscured defendant's view, as well as that of plaintiff's decedent, who crossed in front of it.

"That defendant knew that the bus on which decedent was a passenger, had stopped at the down-town corner of Main street and Chestnut Place to discharge passengers.

"That defendant was a resident of Danville and familiar with all of the physical surroundings at and near the place of the accident.

"That at the time of the accident traffic was heavy; it was dark, rainy and misty, and visibility was poor.

"That defendant was traveling at a reasonable rate of speed, and brought his car to an almost immediate stop upon striking decedent.

"The evidence being sufficient to establish defendant's negligence, it remains to be determined whether decedent was guilty of negligence which was a contributing proximate cause of his death.

"Negligence is not presumed. Until it appears to the contrary from the evidence before the jury the presumption is that decedent exercised ordinary care. If the evidence fails to show a factual situation inconsistent with the performance of his duty in that respect, the jury's finding that decedent was not negligent is justified.

"Although the evidence points strongly to the probability that decedent was negligent, this is not enough, for the jury

without disregarding any fact established beyond dispute, could have reached any of the following conclusions:

"That decedent before leaving the curb, at a point where his view down the street was unobstructed by the truck, looked to his left and saw defendant's automobile following the slowly moving truck or van in such a manner as to induce a reasonable belief in his mind that it would not undertake to pass the truck at an intersection.

"That, although decedent's view down the street was obscured by the slowly moving vehicle which he went in front of, when he reached a point in the stret, where his view to the left became clear, he saw defendant's automobile, and reasonably believed that he could cross to a point of safety, considering the speed at which defendant was traveling, and in reliance upon an apparent ability on defendant's part to afford him the right-of-way.

"That before attempting to cross in front of defendant's car he saw it in such position with reference to the vehicle preceding it, that he reasonably thought that defendant would stay on the right-hand side of the street, and that relying upon this assumption his lookout and conduct in attempting to cross was reasonably prudent.

"If the facts proven did not compel the jury to conclude that decedent failed to keep a reasonably careful lookout and to exercise reasonable care for his own safety in the light of what a proper lookout disclosed, the Court cannot find to the contrary, and hold that he was negligent as a matter of law. My conclusion is to overrule defendant's motion and enter judgment upon the jury's verdict."

Certainly this is such a case as was described by Mr. Justice Holt, speaking for this court, in the case of *Moore* v. *Scott,* 160 Va. 610, 169 S. E. 902, 904:

"Counsel for Moore, with characteristic candor, concedes that his client was negligent, but contends that Dr. Scott was also negligent as a matter of law. This, of course, is an affirmative defense, and is the only defense here relied upon.

"Time and again we have had occasion to consider the status of verdicts confirmed. In *Gaines* v. *Campbell,* 159 Va. 504, 166 S. E. 704, 708, we said: 'When we come to consider facts which are the subject of sharp dispute, and have ascertained that a jury's verdict and a court's judgment find in the evidence substantial support, our task is at an end. It would be futile to discuss conflicts in detail when at the end we would have to admit that the verdict and judgment are controlling. It is only necessary to know that there is evidence sufficient to support the verdict.' See also, *Trant Motor Co.* v. *Jordan,* 145 Va. 334, 133 S. E. 657; *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Virginia Electric and Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329, 333."

We think the case, as to all of the issues emphasized, is one that is peculiarly for a jury; if not, then that arm of judicial procedure would be here shorn of its rightful functions without legal justification. We affirm the judgment of the trial court.

*Affirmed.*