# Richmond

## DR. J. E. MILLER V. G. C. JONES.

January 8, 1940.

Record No. 2129.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*Preston P. Taylor,* for the plaintiff in error.

*A. A. Bangel,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Under review is another automobile accident. A pedestrian who was struck down had eight of his ribs broken. By way of compensation he has recovered a verdict and judgment. From it the defendant has appealed to this court and has obtained a writ of error.

Governing principles in such a case are not complicated, but facts sometimes shade into each other and make their application troublesome.

Here the plaintiff, G. C. Jones, a man forty-two years old, on June 1, 1938, about eleven o'clock at night, walking towards the north, was crossing High street in the city of Portsmouth where it intersects with Virginia avenue. When about its center, he looked to his right and saw a car approaching then near Ninth avenue and something more than 400 feet away. He did not look again and did not see it again until he was struck, which, he tells us, was when he was two or three feet from the north line of High street. That street from curb to curb is sixty feet wide. Virginia avenue intersects High street at right angles, and the point of the accident appears to have been in line with its west sidewalk prolonged. At that time there was approaching High street a car on Virginia avenue going south, which stopped near High street at about the time Jones was struck, and it was upon this car that his attention was fixed. The night was clear and Jones said that there was no other traffic on the road.

A short distance to the east of Virginia avenue the tracks of the Norfolk & Portsmouth Belt Line Railroad cross High street at right angles. The speed limit on High street is 25 miles an hour, but cars were required to slow down to five miles at the Belt Line crossing. Police Sergeant Saunders said that the defendant told him he was traveling at the rate of about 35 miles an hour.

This defendant, Dr. J. E. Miller, had received a telegram telling him of his mother's illness in Pittsburgh and in response thereto had started to that city.

L. J. Hall was a watchman who from his nearby tower handled the safety gates at this Belt Line crossing. He said that Dr. Miller did not slow up for it and that Jones' body was thrown by the impact about 30 feet.

Dr. Miller in a deposition said that traffic was flowing east on the south side of High street, that he was driving from 20 to 25 miles an hour and came almost to a stop at the Belt Line crossing; that Jones had just darted in front of oncoming traffic from the west and appeared to have been waiting for it to pass, when he again darted in front of his car and was struck and knocked 8 or 10 feet. He further said that at the moment of impact he stopped his car dead in its tracks.

Since plaintiff has obtained a verdict and judgment, we, upon familiar rules, must accept testimony given in his behalf, since there is nothing incredible about it. If he was crossing High street at right angles, he had gone about 27 feet while the Miller car traveled something over 400 feet, or about 15 times as fast as he was walking, and did not slow up for the railroad crossing. From this it follows that the defendant was guilty of negligence and so far as the evidence is concerned was subject to a judgment, unless the plaintiff, as a matter of law, was guilty of contributory negligence. Negligence and contributory negligence are usually matters for the jury, and its judgment will not be disturbed unless plainly wrong. Jones was crossing at an intersection where he had a right to cross and where he had the right of way. Miller could have

seen him had he been paying any attention at all, and Jones could have seen Miller had he looked again. But his attention was fixed upon the approaching Virginia avenue car, which was almost upon him and which appeared to him to be imminently dangerous. That his attention should have been directed to it might have been expected.

Our statutes deal with the rights of pedestrians. In Code, section 2154, subsection 123, it is said:

"The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices."

In subsection 126 of said section, it is said:

"This shall not entitle the pedestrian to enter or cross the intersection, regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing."

Commenting upon this statute in *McQuown* v. *Phaup*, 172 Va. 419, 2 S. E. (2d) 330, we said:

"From this it will be seen that while a pedestrian can neither enter nor cross intersections regardless of approaching traffic, she has under the statute the right of way. This right, when not abused, must be upheld."

We also said, "To ask that a pedestrian at a crossing in which she had the right of way look in every direction at once is to ask too much," citing *Lucas* v. *Craft*, 161 Va. 228, 170 S. E. 836.

The defendant relies upon *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711, and cases which have followed it. There a plaintiff at a crossing on Broad street in Richmond looked as he started over and saw an approaching car half a block away; he did not look again and was struck

before he reached the center of the street. This was held to be negligence as a matter of law. The principle applied is eminently sound; but in the instant case, the Miller car when first seen was a block or more away, while that coming down Virginia avenue was near at hand and demanded immediate attention. In these circumstances the jury was of opinion that Jones was not negligent as a matter of law, and with that conclusion we are in accord.

■ At the instance of the plaintiff, the court gave this instruction:

"The court instructs the jury that the law provides the driver of any vehicle upon a highway within a business or residential district, shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices."

To it the defendant offered this amendment, which was refused:

"But you are further instructed that in crossing at an intersection a pedestrian cannot blindly expose himself to danger but must exercise due care for his own safety, and if you further believe from the evidence that the plaintiff failed in this and such failure proximately contributed to the accident, then the plaintiff cannot recover."

But that addendum was incorporated into one of the defendant's instructions.

Counsel for the defendant, in the course of his argument, said that Hall, a witness for the plaintiff, "had proved to be a very zealous witness, and he did not know why he was so zealous," to which plaintiff's counsel, in his closing argument, replied: "I know why Hall was so zealous. He saw this man (defendant) coming up at such a rapid rate of speed. He probably felt like I would. He felt like he wanted to take a gun and shoot him." To this argument counsel for the defendant objected and the court thereupon

instructed the jury to disregard it. After the jury had retired but before a verdict counsel for the defendant moved for a mistrial, which was refused.

Plainly this argument was improper. Counsel for the plaintiff, who is an experienced lawyer, should have known that it was improper—he probably did—, but the court did all that was possible, save that it did not direct a mistrial. The verdict of the jury itself would indicate that it was not swayed by passion. It was not excessive and is but one-half of that asked for. When we take these facts into consideration, and making some allowances for the provocation which called forth the objectionable observation, we, with some hesitation, have reached the conclusion that this was not reversible error.

Finally, it is said that the verdict itself is excessive. $5,000 is not an extravagant price to pay for breaking eight ribs.

There is no reversible error in the judgment appealed from, and it is affirmed.

*Affirmed.*