# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

S. PORTER ONEY v. EDGAR F. JAMISON AND GEORGE S. VIA.

June 10, 1940.

Record No. 2209.

Present, All the Justices.

The opinion states the case.

*Showalter, Parsons, Kuyk & Staples,* for the plaintiff in error.

*Walter H. Scott,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This case involves the claim of Edgar F. Jamison and George S. Via, who were the plaintiffs in the trial court and who are the defendants in error here, for commissions amounting to $1,000.00 on account of the sale alleged to have been made by them, as real estate agents, of a tract of land in Roanoke county, Virginia, adjacent to the city of Roanoke, containing 80 acres, which belonged to S. Porter Oney, the defendant in the trial court and the plaintiff in error here.

The parties will sometimes be referred to as the plaintiffs and the defendant, and sometimes by their individual names.

Oney had owned the tract of land for about ten years. He had made repeated but ineffectual efforts to sell it. The reasons which he assigned for his desire to dispose of it were that he was under the burden of some pressing indebtedness, which he wished to liquidate as quickly as possible, and that his health had become impaired, necessitating his retirement from business.

He listed the property for sale with a number of real estate agents or brokers. This was done by oral authorization. For a period of some years there seemed to be no demand for it. It was really a drug on the market until the year 1938, when the owner became more anxious to turn it into money, and to that end he importuned the plaintiffs, especially, to quicken their efforts to make a sale. The plaintiff, Via, became particularly active in his efforts.

It should be unnecessary to say what we have so frequently said before, that when a litigant comes before this court with the favor of a verdict of the jury approved by the trial court he occupies the strongest position known to the law, and that, in such case, the facts should be stated and accepted in the light most favorable to him.

That there is some conflict in the testimony in this case there can be no question. But with the rule, as stated, in mind, it is proper to say that Mr. Oney listed his land with the various agents upon the condition, well understood, that it would net him the sum of $12,000.00. We stress this because of his manifest disposition, seen through his testimony, to avoid the discussion, even the mention, of commissions. He was averse to commissions, but possessed an avid capacity to enlist and increase the efforts of agents in his behalf.

The original authorizations, referred to, to the plaintiffs were never revoked. The emphasis of Mr. Oney was on the $12,000.00 for the land, net to him—anything above that—anything in excess of that—was to be the compensation of the agent.

As has been stated, the property was slow to move. The best that the plaintiff Via could do was to present an

offer of $10,000.00, in gross, made by the plaintiff, Jamison, and his friend Stanley. This was rejected by Mr. Oney, who tenaciously adhered to his demand for $12,000.00 net. The matter was up in the air, as it were, until the importunities of Oney to Jamison to sell the land resulted in Jamison's effort to make sale of it through the means of a corporation, which he undertook to form. His earnestness as to this was evidenced by his own willingness to subscribe to a part of the stock, which Mr. Oney also agreed to do, when there loomed before him the possibility of his realizing substantially more money than his listing price. Mr. Oney was in a hurry. He wanted quick action and, therefore, the period fixed for the formation and conclusion of the corporation was 15 days. The plaintiffs induced their friend, Stanley, to take some of the stock, but there were remaining, shares unsold, which prevented the sale of the land through this medium.

An agreement effectuating the provisions of the corporation was written and signed by Oney, Jamison and Stanley. This agreement contained no provision relating to commissions to the plaintiffs or to any other person. Its terms were entirely unrelated to the listing agreements referred to. It, however, is urged by the defendant as a revocation of or substitution for those agreements. We are not impressed with this as a sound proposition of law or of fact. It appears to us as but a redoubled effort to accelerate the wishes of Mr. Oney, and, really, to effect his controlling purpose in listing his land for sale. It emphasizes, we think, the energy and ingenuity of the plaintiffs in the behalf of their client.

The fifteen day period expired. The corporation never became a verity. There was never a revocation of the listing authorization of the plaintiffs. It was still in full vigor and effect and Jamison quickened his efforts under its terms to the point of submitting to Mr. Oney a contract signed by Mr. Stanley, accompanied by Stanley's check for $1,000.00, the balance to be paid upon the conveyance of the title to him. The $13,000.00 represented $12,000.00 net to Mr.

Oney and $1,000.00 compensation to the plaintiffs, whose efforts in making the sale had been joint.

Mr. Oney declined to accept the contract, but a few days later he did accept one for the sale of the land to Stanley, the identical purchaser proffered by the plaintiffs, for $13,-500.00, this contract having been procured by Mr. Flora, another real estate agent. By this consummation, Mr. Oney got a trifle more for his land, but the plaintiffs were without compenastion for the work they had performed culminating in a sale in accordance with the listing authorization, but rejected by the owner.

The evidence shows that the purchaser, Mr. Stanley, was first made known to Mr. Oney by the plaintiff, Via; that he was a friend of the plaintiff, Jamison, who took him to see the land several times, who walked over it with him and who impresesd him with its possibilities as an investment; that Stanley, who was introduced as a witness by the defendant, testified that he told Mr. Flora that Jamison was the man who had made the sale to him and that he told Flora that he should pay a part of the commissions he had received to him, and that he, Flora, was supposed to go to Jamison with a check to satisfy him; that Mr. Oney's attorney sought to have the matter of compensation to Jamison adjusted. All of this is strongly persuasive of the rights of the plaintiffs in the premises and it points to the justness of the jury's verdict and the court's judgment. The evidence abundantly shows the vacillating attitude of Mr. Oney. Whenever there was an indication of a prospective purchaser coming to his terms he would raise the price. He finally sold his land through an agent who had never shown the property to Mr. Stanley and one who knew that he was the prospect of the plaintiffs, and this sale did not receive the O. K. of Mr. Oney until he had gotten the agent to reduce his commissions to the small sum of $250.00. The situation revealed by the evidence is strange enough to provoke wonderment. It may be accounted for by the disclosure that the young agent who closed the deal with Mr. Oney was a friend of a member of his family.

The defendant complains that the court erred in not granting instruction "B" offered by him. This instruction is as follows:

"The court instructs the jury that if you believe that the plaintiffs abandoned whatever original agreement they may have had with the defendant, and substituted therefor a new agreement providing for the promotion of a corporation, then, unless you further believe that the defendant at the same time expressly agreed that plaintiffs might continue their efforts under the original agreement, you shall find for the defendant."

There was no error, we think, in the refusal of the court to grant this instruction. We do not think that there was any evidence of the abandonment of the original agreement upon which an instruction could be based. Indeed, the testimony was decidedly contrary to this view.

We think the jury was properly instructed, and that their verdict and the judgment of the court were plainly right. The judgment is affirmed.

*Affirmed.*