# Richmond

## Julian Carroll Thornton v. Catherine M. Downes, Adm'x, Etc.

April 21, 1941.

Record No. 2349.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Aiken, Sanford & Johnson,* for the plaintiff in error.

*Meade & Talbott,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

Catherine Downes, administratrix (plaintiff in the court below), brought this action against J. C. Thornton, defendant, to recover damages for the wrongful death of her intestate, E. W. Moss, which was caused by the negligent operation of an automobile owned and driven by the defendant at the time of the accident. There was a trial by a jury which resulted in a final judgment entered by the court in favor of the plaintiff in the sum of $10,000.

It is a well settled rule that where a plaintiff has obtained a verdict and judgment, we must accept testimony given in his behalf, unless such testimony is incredible. *Miller* v. *Jones,* 174 Va. 336, 6 S. E. (2d) 607.

In the case at bar, there is nothing incredible about the evidence adduced by the plaintiff, though it must be admitted that there is a conflict in the evidence. However, the jury has resolved all conflicts in favor of the plaintiff. This being true, the rule stated by Mr. Justice Browning in *Oney* v. *Jamison,* 175 Va. 420, 9 S. E. (2d) 346, is applicable. There it is said:

"It should be unnecessary to say what we have so frequently said before, that when a litigant comes before this court with the favor of a verdict of the jury approved by the trial court he occupies the strongest position known to the law, and that, in such case, the facts should be stated and accepted in the light most favorable to him."

The facts determined by the verdict of the jury are as follows: The accident which occasioned the death of Moss took place on Main street in the city of Danville, at approximately 10:30 p. m. Moss, at the time of the accident, was sixty-five years of age, in excellent health and very active for a man of his years. He was employed by E. A. Jones who operates the Jones Pharmacy in Schoolfield, a suburban town near the city of Danville. The night in question was a clear, cold one, and Moss, in a car driven by Jones, left the pharmacy at 10:15 P. M. for his home in the city. When Jones reached a point west of the bus stop near the intersection of Main street, which runs east and west, and Holbrook street, he stopped his car near the curb to let Moss get out. At the time of the accident there were no automatic signals operating and no traffic officer on duty at or near the intersection of Main street with Holbrook street. However, on the northwest corner of the intersection and within a short distance west of the point where the impact occurred, there was a lighted street light; also, a lighted street light was stationed a short distance to the east. After alighting from the Jones car, Moss left the curb on the north side of Main street and

proceeded toward the south sidewalk. At the time Moss entered the street there were no cars either travelling along the street or parked along the northern sidewalk, but on the south side of the street there was one car parked just opposite the point where Moss was struck by the car of defendant. Main street, at this point, is 47.2 feet from curb to curb.

Moss, after proceeding in the usual manner from the northeast curb toward the opposite curb for a distance of twenty-one feet, stopped at a point approximately in the center of Main street to permit an automobile, operated by one Sam Thompson and proceeding east along the street, to pass in front of him. While Moss was thus standing in or near the center of the street, in close proximity to the two street lights, the defendant, accompanied by a young lady with whom he was engaged in conversation, was driving his automobile close to the center line westward on Main street and approaching Moss, with a street clearance of at least twenty-one feet from the point where Moss was standing.

F. H. Barber, a police officer who investigated the accident immediately after it occurred, testified that defendant told him ''that he was going up on Main street, talking to his girl, and all at once Mr. Moss just sprang up from nowhere, and he had done hit him before he saw him''.

It appears from the testimony of Sam Thompson, the operator of the car which Moss stopped to let pass, that a car was parked opposite where Moss was standing approximately in the middle of the street; that he was in plain view, as the arc lights were burning; that Moss ''Kinda turned to face my car at the time Mr. Thornton struck him''; that Thornton did not blow his horn, that he was driving near the center of the street, that he did not slacken his speed of approximately twenty-five miles per hour; that he did not change the course of the car before he struck Moss; that Moss did not step backward

into the car of Thornton; that he did not move "out of his tracks", but stood in the street "facing towards my car"; that if he had taken two steps forward he would have been hit by the Thompson car; that the Thompson car, travelling east, was on the right of the center line; that defendant had room to pass behind Moss (as heretofore stated, twenty-one feet); that immediately after Moss was struck by the car of defendant, two large spots of blood were observed on the eight-foot yellow line which denotes the center of Main street.

It is assigned as error that:

"The trial court erred in overruling ·the petitioner's motion to set aside the verdict as contrary to the law and evidence and enter final judgment for the defendant upon the grounds that the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law, and further that the evidence showed that the sole proximate cause of the plaintiff's injuries and resulting death was the negligence of Sam Thompson, the third party, who was driving his automobile down the street from the opposite direction."

A careful consideration of the record fails to show a *scintilla* of evidence which could support the contention that the death of Moss was proximately caused by the negligence of Sam Thompson. This being true, let us proceed to answer the question: Was Moss guilty of contributory negligence as a matter of law?

In *Moore* v. *Scott*, 160 Va. 610, 621, 169 S. E. 902, Mr. Justice Holt cites with approval the following rule stated in 2 Blashfield, Cyc. of Automobile Law, p. 1020:

"The question as to whether a pedestrian, who is struck by an automobile or other motor vehicle, at or near a regular street crossing, or at a place customarily used as a crossing, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury."

From the statement of facts which bears the stamp of approval of the jury, it must appear that there is sufficient evidence to support the verdict. *Gaines* v. *Campbell,* 159 Va. 504, 166 S. E. 704.

There is no dispute of the fact that when Moss alighted from the Jones automobile he proceeded for a distance of approximately twenty-one feet until he stopped at or near the center of Main street to permit the passing of the Thompson car. If he had reached the middle of the street, as stated by Thompson, he was in "a zone of comparative safety" and had every reason to believe that Thornton, who had a twenty-one foot space between him and the right-hand curb, would pursue the proper course and veer to the right in order to avoid striking him. Certainly no legal duty rested upon Moss to commit suicide by stepping in front of the Thompson car in order to escape being killed by the reckless operation of the Thornton car.

When a pedestrian, in a city or town, steps from the sidewalk into the street at an intersection, the law imposes upon him the legal duty of ascertaining if any vehicular traffic is approaching from the left. If the way be clear, he has the right to proceed to the comparative zone of safety, which is the center of the street. Upon his arrival at the center of the street, he is under the legal duty of looking to his right for approaching vehicles, and while the statute (section 2154(126) subsection b), accords him the right of way, he would be guilty of contributory negligence which would bar a recovery for injuries suffered, if he attempted to assert his right of way in the face of approaching traffic dangerously near to him.

Though the defendant denied making any statement to the police officer, Barber, in regard to the accident, it was the province of the jury to determine the conflict, and in our opinion the jury was warranted in drawing the inference that the defendant was engrossed

in conversation with his young lady companion and utterly oblivious of the predicament of Moss.

There is no merit in the first assignment of error.

It is assigned as error that the court erred in refusing to permit the police court record (containing thirty-four pages), in the criminal case of the Commonwealth against Thornton, to be introduced in evidence.

No authority to sustain this assignment has been produced, nor have we been able to find any authority which throws light upon the question. It is conceded by counsel that the purpose in seeking the introduction of this record was to show "inconsistent statements of material witnesses describing how the accident occurred", and to corroborate the statements of the defendant. In other words, it was an effort upon the part of the defendant to impeach some of plaintiff's witnesses, and, by the record of a collateral proceeding, to corroborate his own statements.

The answer to this statement, if authority is needed, is found in *Bennett* v. *Robertson,* 107 Vt. 202, 177 A. 625, 98 A. L. R. 152. There we read:

"As applicable to the foregoing, our rule is that a witness, not a party, may be impeached by giving in evidence statements made by such witness, at a former trial or elsewhere, which are inconsistent with his testimony, the foundation of such impeachment having first been laid by calling the witness' attention to the claimed statement, and questioning him about it. Such statements are impeaching statements only, and, where the witness is not a party, are not evidence to prove the fact to be as stated."

It is further assigned as error that the court erred in giving certain instructions for the plaintiff.

From a careful and painstaking consideration of the instructions given, we are of opinion that this assignment is without merit.

Upon the whole case, our conclusion is that the law

and the facts clearly demonstrate the correctness of the verdict of the jury and the judgment entered by the trial court.

The judgment is affirmed.

*Affirmed.*