## Wytheville

### ARLINGTON AND FAIRFAX MOTOR TRANSPORTATION COMPANY, A CORPORATION v. JAMES H. SIMMONDS, ADMINISTRATOR, ETC.

June 22, 1944.

Record No. 2816.

Present, All the Justices.

The opinion states the case.

*J. Harry Welch, Frank L. Ball* and *John C. MaCarthy,* for the plaintiff in error.

*James H. Simmonds, John L. Culler* and *Ernest Russell,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

James H. Simmonds, administrator of the estate of Anna Mallinoff, deceased, instituted this proceeding by notice of motion for judgment against the Arlington and Fairfax Motor Transportation Company, a corporation, and Archie Wells, its employee, alleging that his decedent was killed by the negligence of the defendants. Their negligence was charged in two counts,—in one, that the decedent, a passenger on the bus of the company, a common carrier, had been discharged at an unsafe place and, in the other, the improper and unlawful operation of the bus by Archie Wells.

The defendants filed a plea of the general issue and grounds of their defense. Their grounds of defense set out that they were not guilty of any negligence, and that the death of Mrs. Mallinoff was caused solely by her own negligence. Before the evidence was heard, a non-suit was taken as to Archie Wells. The jury found a verdict against the defendant company on both counts, and fixed the damages at $6,000. Over the objection of the defendant, judgment was entered for the amount of the verdict.

The defendant assigns several grounds of error: (1) that the verdict is contrary to the law and the evidence; (2) that the evidence does not disclose any negligence of the defendant; (3) that the plaintiff's decedent was guilty of contributory negligence barring her recovery; and (4) that the trial court erred in the admission of evidence and the granting and refusal of instructions.

We think it proper first to determine whether or not the evidence disclosed that Mrs. Mallinoff was guilty of negligence proximately contributing to the accident which resulted in her death. If she was, then her estate is barred of a recovery and it is unnecessary to consider the remaining assignments. Since the verdict has been rendered in her favor, the facts will be stated in the light most favorable to her.

The defendant company is a common carrier, operating a bus line in Arlington county, over a highway known as Glebe Road.

On September 1, 1942, Mrs. Mallinoff was a passenger on one of its buses operated by its employee, Archie Wells, along its usual route. The bus had proceeded in a northerly direction on Glebe Road, and at approximately 4:50 o'clock p. m. stopped at its regular stop near the intersection of Glebe Road and Wilson Boulevard, at a point on the east side of Glebe Road and south of Wilson Boulevard, to discharge several passengers, including Mrs. Mallinoff. Wilson Boulevard runs east and west, Glebe Road north and south. Glebe Road, after intersecting Wilson Boulevard on its southern side, runs to the left along the boulevard for a

short distance, and then turns off again to the north. An acute angle is formed in the southeastern intersection of the two highways. In the triangle there formed is a gasoline filling station, with a driveway in front connecting the two highways. A small grass plot is situated between the driveway and the two highways.

Immediately west of the filling station and to the east of Glebe Road is a safety stop sign requiring all traffic on Glebe Road to come to a stop before entering the boulevard. Glebe Road is a paved State highway 20 to 21 feet wide, with a white line in its center marking the division between northbound and southbound traffic. This pavement and marking continue up to the intersection with the boulevard. To the west of the filling station and around the angle leading to the right into the boulevard there has been placed a hard surface between the above regular pavement and the curb line. Glebe Road, at this corner, has been curved so that it cuts off the sharp point of the acute angle,—the effect of which is to widen the entry to and from the boulevard. The extra hard surface is about 2 inches lower than the pavement in the center of the road.

On the trip mentioned, the bus came to a stop, with its rear opposite the stop sign on the east side of Glebe Road above mentioned. This point had been used for ten years as a regular bus stop, although not so marked. Four, five, or six passengers got off, among them Mrs. Mallinoff, who had travelled on the same route before and had gotten off at the same place. On this occasion she was the last passenger to alight from the right front door of the bus. After she alighted, the driver closed the door, started the bus, and steered it slightly to the left to make a left-hand turn into Wilson Boulevard. He stated that "When she got off the bus and the door was clear," it was the last he saw of her until he saw her under the bus.

Wells said that he had only travelled about two or three feet when, at one and the same time, he felt a little jar of the bus and heard someone holler that he had run over someone. He extended both of his arms to show the distance

he had moved. Mrs. Mallinoff was struck by the front of his bus, knocked down, and the bus rolled over her legs which extended outside the right front wheel, with her torso under the bus. The bus came to a stop with one of her legs in front of the right front wheel and the other behind it.

Mrs. Mallinoff was promptly carried to a hospital. There was a compound dislocation of her right ankle, and most of the skin and muscles were torn from her right leg. There was a fracture of her left ankle and multiple contusions and abrasions of her entire body. She did not regain consciousness and died September 3, 1942.

She was fifty-six years of age, and was described as being rather short and stout. She had recently moved her residence to a house on the west side of Glebe Road. The point of the accident was near or within the lane customarily used by pedestrians in crossing Glebe Road. There were no marks or colored lines to indicate a specific crosswalk.

From some measurements it was disclosed that the bus, after the accident, came to a stop about 12 feet from the point where the passengers were discharged. The left rear of the bus was then 13 feet 10 inches from the west side of Glebe Road, and its right rear was 20 feet from the east curb. It was, however, entirely on the crowned surface to the right of the center white line, its right side of the road. The road is about 71 feet 6 inches wide. The bus was 7.8 feet wide and 27.3 feet long from bumper to bumper. From the front of the door to the front of the bus it is 4.6 feet and from the hub of the right front wheel to the front of the bus it is 6.1 feet.

Traffic north on Glebe Road, turning right into Wilson Boulevard, usually passed on the extra paved surface between the point of discharge of the bus passengers and the east curb next to the gasoline station. Both highways are heavily travelled. The accident occurred at a time when the flow of traffic was ordinarily heavy on both highways, although no vehicle except the bus was noted on Glebe Road at the time of the accident.

Measurements disclosed that at a distance of 18 inches from the front of the bus an object had to be 4 feet, 7 inches from the ground in order for it to be seen from the front windshield, if the operator of the bus was of the same height as Wells, and occupied the normal and natural position of a bus driver.

There were two disinterested witnesses to the accident.

Joseph Parisi was standing on the north side of Wilson Boulevard, opposite the intersection of Glebe Road, waiting for a shuttle bus to take him home. He had a view down Glebe Road "right straight to the bus." He said, "Well, I was waiting for the shuttle bus to take me home and all of a sudden I saw this woman trying to cross, and the bus got rolling and hit the lady, and she got underneath the bus. I screamed; I yelled. I don't know whether the bus driver heard me, but he stopped." He said that he screamed just as she fell. On direct examination as to whether she had started across in front of the bus before it started moving, he answered, "Well, as far as I can remember, she had started before the bus moved." He did not notice her make any change in direction before she was struck nor could he tell whether she saw the bus before it struck her. On cross-examination, in answer to a question whether he was definitely certain whether the bus had started before she started to cross, he replied, "No, I am not definite," and on re-direct examination, whether or not the bus had started at the time Mrs. Mallinoff started across in front of it, he replied, "No, I can't remember distinctly, but I know the moment she started to cross, the bus moved down a little."

The other eyewitness, Herman Samet, a photogrammic engineer by profession, was standing on the north side of Wilson Boulevard, a little west of Parisi, waiting for a transfer bus to take him home. He said he was looking directly at the defendant's bus and saw Mrs. Mallinoff get off it, and that she was the last passenger. He described what he saw as follows:

"Q. Did you see this lady that was killed?

"A. Yes, I saw her get off the bus.

"Q. Do you remember whether she was the first or the last one?

"A. I remember distinctly she was the last one.

"Q. Was she a short or tall lady?

"A. Short, four-foot nine, and rather stout.

"Q. What did she do?

"A. She stepped off the bus and was carrying a shopping bag. She hesitated a minute, turned to the left, and went across in front of the bus.

"Q. What did the bus do?

"A. I was looking at the bus to see how crowded they were, and this driver, I saw distinctly, looked up and down both sides and at the time no cars were coming, and he started the bus.

"Q. At the time she turned and started in front of the bus, had the bus started moving again?

"A. Yes, it had started and was slowly moving. He shifted first.

"Q. How close did she get across in front of the bus?

"A. Well, she turned and was very close. I wouldn't say she was more than a foot and a half away in front of the bus.

"Q. Could you tell what part of the bus actually struck her, the right or left side?

"A. As I was facing the bus, it was on my left and on the driver's right.

"Q. How did she fall, Mr. Samet?

"A. She fell—that was distinctly visible, directly in front of me—with her hands up in the air and face toward me. She fell on the forward part of the body.

"Q. Did her face go forward?

"A. Her face fell forward and she fell in front of the bus.

"Q. Did she roll any?

"A. When she rolled in front of the bus, it didn't go over her leg after I yelled that he hit her.

"Q. Who yelled?

"A. Another fellow; Mr. Parisi, he was standing on the

stand there. We both yelled about the same time and both ran across the street.

"Q. Did you assist in getting her out? ·

"A. Yes, I did."

We have set out the evidence rather fully because of the effect which the plaintiff attributes to the alleged negligent acts of the defendant. However, it is well to note that if Mrs. Mallinoff was discharged at a point in a county highway which was potentially unsafe for pedestrians, ·there is not the slightest evidence ´that, either at the time of her discharge or her subsequent accident, there was .any imminent danger to her at that point. No cars were seen to be approaching, and·if any were approaching she had the protection of the stop sign and the stopped bus, both in plain view. Drivers of approaching vehicles were charged with keeping a lookout and with giving respect to her antecedent presence in the highway.

■ ■ Conceding that the law imposes upon the operator of a bus the duty to exercise a greater degree of vigilance at an intersection, this does not absolve a pedestrian from the duty to exercise ordinary care for his own safety. Conceding Mrs. Mallinoff the right of way, this gave her no right to step directly in front of the moving motor bus. It was her duty, under the circumstances, to exercise care commensurate with the danger which the situation presented. *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711; *Virginia Elec., etc., Co.* v. *Blunt,* 158 Va. 421, 163 S. E. 329; *Moore* v. *Scott,* 160 Va. 610, 169 S. E. 902; *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345; Virginia Code, 1942, (Michie), section 2154 (126).

There were only two witnesses to the accident, both disinterested and unimpeached. All presumptions as to how the accident occurred give way to the positive ascertained facts. One of these witnesses was entirely uncertain as to whether the bus had started·before Mrs. Mallinoff started .to cross the road in front of it. The other witness stated clearly, distinctly, and positively that the bus had started and was moving slowly, with its front not more than a foot

and a half from Mrs. Mallinoff, when she turned to her left and stepped directly in its line of passage. There is no contradiction whatever of this fact, and it is a disclosure of the immediate and proximate cause of the accident.

 It is negligence as a matter of law to heedlessly or inadvertently step directly in front of a moving bus, and this rule applies as well to a passenger just discharged from a bus in a potentially unsafe place, when and where there is no immediate or imminent danger which requires or justifies such a step, as to any other pedestrian. The accident to Mrs. Mallinoff would not have occurred but for her heedless and needless misstep.

The plaintiff relies upon statements in *Thornton* v. *Downes, supra,* and *Moore* v. *Scott, supra,* that the question whether a pedestrian who is struck by an automobile in an intersection exercised proper care, or has been guilty of contributory negligence, "is almost invariably one for the jury." That is true where the evidence is in conflict, as it usually is. In this case there was no conflict in the evidence. There was no question of fact for the jury. In each of the cited cases, the facts were in sharp dispute.

██ As said in *Virginia Elec., etc., Co.* v. *Blunt, supra,* and *Thornton* v. *Downes, supra,* while the statute, Virginia Code, 1942, (Michie), section 2154 (126), relating to the rights of pedestrians at intersections, accords a pedestrian the right of way at such intersections, the pedestrian is guilty of contributory negligence which bars a recovery for injuries suffered, if, abandoning all care, he attempts to assert his right of way in the face of approaching traffic dangerously near to him.

There is no evidence whatever that the operator of the bus discovered or could have discovered, in time for him to have taken steps to avoid striking Mrs. Mallinoff, that she would step immediately in front of his bus. *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486; *Willard Stores* v. *Cornnell,* 181 Va. 143, 23 S. E. (2d) 761.

Other interesting questions relating to the instructions are not necessary to be considered. The contributory negligence

of the decedent was shown by positive uncontradicted evidence. It follows that the trial court should have sustained the motion to set aside the verdict as contrary to the law and the evidence, and entered a final judgment for the defendant. Such final judgment will be here entered.

*Reversed and final judgment.*