# Richmond

A. L. NELSON AND A. L. NELSON TRUCK COMPANY V.
MRS. JEAN DAYTON.

January 14, 1946.

Record No. 2992.

Present, All the Justices.

The opinion states the case.

*Fred B. Gentry* and *B. E. Estes*, for the plaintiffs in error.

*T. Warren Messick* and *Dirk A. Kuyk*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The learned Judge of the Trial Court incorporated in the record his opinion in this case. It is eminently sound and well expresses our views, hence we adopt it as the opinion of this court, with the exception of the first two paragraphs which are not necessary to its understanding.

"The accident occurred between 10:00 and 11:00 o'clock P. M. on the night of December 16, 1942, at the intersection of Sunset Drive and Route No. 24 in Roanoke county near what is known as Lakeside, about 2.3 miles west of the corporate limits of the city of Roanoke. Route No. 24 is a state highway, 27.8 feet wide, with three lane paved surface running between the city of Roanoke and Salem, Virginia. The traffic over this highway is usually heavy. It runs east and west and is straight for a distance of at least 1000 feet east of Sunset Drive and for approximately one-half mile west of the intersection. The night was clear and dry. No vehicles were parked upon the highway in either direction

that might interfere with the vision of the bus driver or of Mrs. Dayton. At the intersection are stores, residences and a filling station. The area is used and occupied for residential purpose. With the exception of Lakeside Park the area on both sides of the highway is thickly settled though the dwellings are not built close to each other.

"On the night in question, the plaintiff, who lives on Sunset Drive and is a voluntary Salvation Army Worker, had been to Catawba Sanitorium in an automobile owned and operated by C. A. M. Woodson. With them were Mrs. Irene Davenport and Lt. Evelyn Justice. Upon their return Woodson parked his car on the south side of the highway at a point where a street, known as Route No. 629, intersects it, for the purpose of discharging plaintiff and Mrs. Davenport, who lived across the highway on Sunset Drive. Sunset Drive intersects the highway on the north and slightly west of the point opposite where Route No. 629 intersects on the south.

"After plaintiff and Mrs. Davenport alighted from the car Woodson pulled away in the direction of the city of Roanoke. Plaintiff and Mrs. Davenport walked westerly along the south side of the highway to a point directly opposite the intersection of Sunset Drive, and when the Woodson car had proceeded about 200 feet up the highway, then proceeded to cross the highway in the direction of Sunset Drive. Before attempting to cross the highway they looked in both directions for the approach of vehicles. No vehicles were approaching from the west. Towards the east, which would be on the plaintiff's right as she proceeded across the highway, they saw the lights of a vehicle approaching, at that time it was up about the Tabernacle or church, a distance of 1000 feet. Both plaintiff and Mrs. Davenport thought they had ample time to cross the highway in safety. Without looking again, they proceeded across the highway, walking rather fast. Mrs. Davenport crossed safely. Plaintiff was a step or two behind her and when she reached a point one step of the edge of the hard surface on the opposite or northern side of the highway, she was struck

by the right front fender of defendant's bus. The bus driver had a clear and unobstructed view of the highway and of the two ladies.

"He testified that he did not see plaintiff until he was within 40 or 45 feet from her. He made an effort to miss striking her by slightly turning his bus to the left but was unable to do so. When he first saw plaintiff she was in the middle lane going toward the white line toward the right. He further claimed he was blinded by the lights of the Woodson car, which was, according to his evidence, about 60 feet from the point of the collision. Lt. Evelyn Justice, who was in the Woodson car, testified the distance was about 200 feet from the intersection when the bus met the Woodson car. The testimony of the plaintiff, as to the distance away of the car, at the time she proceeded to cross the highway, would place it even farther.

"If the lights on the bus were in proper working order and properly adjusted, the driver of the bus, unless blinded by the lights from the Woodson car, could have seen plaintiff when he was 300 feet away. If he was blinded by the lights of the Woodson car he still had 200 feet in which to have seen her. The jury have by their verdict resolved this conflict in favor of the plaintiff. It would thus appear that the driver of the bus was not looking or he would have seen the plaintiff at least 200 feet away, or if he was looking he should have seen her. It also appears from the evidence that although he claims to have been blinded by the lights from the Woodson car, he did nothing to keep his bus under better control, but proceeded in the same manner as before. In the well considered case of *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389, Justice Spratley, speaking for the court, said:

" 'One who drives faster than he should drive into a cloud of dust, in a snow storm, or in the face of blinding headlights, is required under the circumstances, in the exercise of ordinary care, to increase his diligence to avoid injury to anyone who may be on the highway in front of

him.' Citing *Clark* v. *Parker*, 161 Va. 480, 171 S. E. 600; *Joynes* v. *Coard*, 175 Va. 571, 9 S. E. (2d) 454.

"Further according to the driver's testimony, he first saw the plaintiff when he was 60 feet away and she was in the middle lane. At that point she had about 14 feet to travel; while he was traveling 60 feet. Yet he struck her when she was within one step of safety. On this basis he was traveling at such speed he could easily have brought his bus to a stop or have avoided striking her altogether. His speed would be about 16 miles per hour and this is of course not correct as he places it at 35 miles per hour. The distance of 200 feet or more, as fixed by the evidence of the plaintiff seems more logical.

"The defendant contends the verdict is contrary to the law and the evidence and without sufficient evidence to sustain it. He further contends the court should have sustained his motion to strike the plaintiff's evidence. Upon a consideration of all the evidence it appears that the evidence of the plaintiff is sufficient to support the verdict. Not only did he fail to maintain a proper lookout for the plaintiff at the street intersection but he likewise failed to bring his bus under control when he was blinded by the lights from the Woodson car, if he was blinded. His own statement shows him to be guilty of negligence. Further, it would appear from all the evidence that the plaintiff had the right of way at the intersection which he failed to yield to her.

"Defendant next contends that the plaintiff was guilty of contributory negligence as a matter of law which precludes her recovery. The matter of her negligence was properly submitted to the jury, who by their verdict have found that her negligence, if any, did not contribute to the collision. In *Thornton* v. *Downes*, 177 Va. 451, 14 S. E. (2d) 345, it was held that the question whether a pedestrian who is struck by an automobile in an intersection exercised proper care, or has been guilty of contributory negligence 'is almost invariably one for the jury,' where the evidence is

in conflict. If there is no conflict there is no question of fact for the jury.

"It may be conceded that the plaintiff was guilty of negligence. It was her duty, under the circumstances, to exercise care commensurate with the danger which the situation presented. Although she had the right of way this does not give her the right to cross highways or streets in front of moving vehicles, if to do so endangers her safety. On the other hand, to wait for all vehicles to pass along a highway, disregarding her right of way, might prevent her from ever crossing the highway. Thus there is also a duty on the part of drivers of vehicles at intersections. Her negligence was in not looking again to the east after she had reached the middle of the highway.

"Whether this negligence was such, as a matter of law, to bar her recovery, depends upon whether the defendant had a last clear chance to avoid striking the plaintiff, when he saw her in the middle of the highway. Whether the last clear chance doctrine should apply in any case depends upon the evidence in that particular case. In the recent case of *Bennett* v. *Spencer*, 167 Va. 268, 189 S. E. 169, the Supreme Court of Appeals of Virginia, quoting from *Keeler* v. *Baumgardner*, 161 Va. 507, 171 S. E. 592, had this to say:

" 'A great deal has been written, both within and without this jurisdiction, about the doctrine of the last clear chance and when it is applicable to the evidence in the cases which have arisen. Possibly nothing could be gained by an attempt to add to what has been said. Certain it is that, when the court is urged to apply the doctrine, it must look to all the evidence, which of course includes the testimony of all the witnesses, the physical facts, and all of the facts and circumstances which are relevant to the case. If from all of the evidence the jury could reasonably find that, regardless of the state of negligence of the plaintiff, the defendant, by the exercise of ordinary care, had a clear chance to save him, and failed to do so, then an instruction on the doctrine is justified. In cases such as the one here, where a defendant

is required by law to keep a proper lookout, the test is, not whether he actually saw the plaintiff in time to have saved him, but whether he could have seen him in time to have avoided the injury, by exercising ordinary care, and failed to do so.

" 'The Jury could have reasonably found from the evidence that * * * the plaintiff was in a state of negligence in crossing the street diagonally between intersections without exercising proper care for his safety. Mrs. Keeler ought to have seen him in his peril, in the exercise of ordinary care, and avoided striking him with her car either by stopping it or by diverting its course. If the jury could have drawn the latter (this) conclusion from the evidence, then the plaintiff was entitled to have the jury instructed by the court on the last clear chance.'

"Applying these principles of law to the instant case it appears that the decision in this case is governed by the more recent case of *Yellow Cab Corp.* v. *Henderson, supra*, where the doctrine is fully set out and explained. It is not necessary to quote further from that case. From the evidence in the instant case it is apparent that an instruction on the doctrine was fully justified and the jury's verdict supported by the evidence. If the driver had been keeping a proper lookout he could have seen the plaintiff in ample time, and by the exercise of ordinary care avoided striking her with the bus, even though she were herself negligent at the time.

"The defendant cites numerous cases in support of his motion that the doctrine of the last clear chance is not applicable here. Among these cases are *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711; *Frazier* v. *Stout*, 165 Va. 68, 181 S. E. 377; *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r*, 129 Va. 297, 105 S. E. 563; *South Hill Motor Co.* v. *Gordon*, 172 Va. 193, 200 S. E. 637; *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486, and *Arlington, etc., Transp. Co.* v. *Simmonds*, 182 Va. 796, 30 S. E. (2d) 581.

"In the first three of these cases the plaintiffs stepped off the sidewalk directly in front of the oncoming car and

within a few feet of it at the time so that the driver had no last clear chance to avoid the collision. In the *Gordon Case,* the plaintiff saw the approaching car a distance of four hundred yards away and could have saved himself by stepping off the hard surface, but made no effort to do so. In adddition there was nothing to show that the driver could have seen him in time to. have avoided striking him.

"In the *Ruffin Case* the plaintiff saw the Green car approaching and stepped directly in front of it and was hit. In the *Simmonds Case* the pedestrian stepped off a bus and then directly in front of it. It was impossible for the driver to see her after she alighted from it. In all of these cases, which our higher court has from time to time distinguished, it is clear that the driver of the oncoming car did not see the plaintiff under the peculiar circumstances (not in this case at bar) or did not have ample time to avoid striking the pedestrian. See *Yellow Cab Corp.* v. *Henderson, supra,* and *Gordon* v. *Bennett, supra.* These cases are easily distinguished from the instant case for the same reasons. In the light of the *Yellow Cab Corp. Case* there was no other verdict the jury could have rendered in this case.

■ "The defendant next contends that Instruction No. 4 given for the plaintiff defining the alleged right of way which the plaintiff had under the circumstances, should not have been given, as it was based upon Section 2154 (126) of the Motor Vehicle Code and was not applicable here. His objection is that this section of the Code applies to intersections within incorporated towns or cities and was never intended to apply to intersections outside of incorporated towns and cities. There is no merit to this contention. In *Hutcheson* v. *Misenheimer,* 169 Va. 511, 194 S. E. 665, and in *South Hill Motor Co.* v. *Gordon, supra,* it was held that this section applies to the highways in rural sections as well as to city streets. Instruction No. 4 correctly states the law. See also, *Lucas* v. *Craft,* 161 Va. 228, 170 S. E. 836.

■ "Defendant complains of the refusal of the court to grant certain instructions asked by him, and to the admission of evidence over his objection relating to the congestion of

the area immediately adjacent to the point of collision. So far as the admission of the evidence was concerned, the plaintiff offered this for the purpose of fixing the speed limit but did not follow it up by asking for an instruction upon it. This did not tell the jury anything, and if error was committed, it was harmless. Under the circumstances it appears to the court that the evidence was admissible in view of the defendant's theory that the driver was not bound to watch for pedestrians at every intersection along the highways. The jury had a view of the premises and could see for themselves the surrounding circumstances of the area. So far as the refusal to grant the instructions requested the court is not inclined to change its opinion as to whether they correctly state the law. The jury were fairly instructed on the issues, and in view of all the evidence, a verdict in favor of the defendant would be contrary to the law and the evidence in this case. The granting of these instructions would not change the right of their verdict. If the court committed error in this, it was also harmless error.

"Neither is the court inclined to disturb the amount of the verdict as being excessive. It does not seem out of line with what the plaintiff has suffered. An order may be entered in accordance with this opinion, which shall make this opinion a part of the record in this proceeding, overruling the motion of the defendant in all respects and rendering judgment for the plaintiff with interest from December 3, 1943."

The judgment of the Trial Court is affirmed.

*Affirmed.*

SPRATLEY, J., concurs in result.