# LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Raphael Joseph Saady

v.

James F. Whitby

June 24, 1969

Case No. 818

BY JUDGE A. CHRISTIAN COMPTON

The sole issue presented is whether or not as a matter of law the plaintiff was guilty of contributory negligence which was a proximate cause of this accident, and the Court has concluded that he was.

On November 28, 1967, the plaintiff, a pedestrian, was struck and severely injured by the defendant's vehicle about 6:14 p.m. as he crossed Ellwood Avenue at its intersection with Auburn Street in a residential area of this city. Ellwood is a one-way street westbound 42 feet wide which is level and straight at this location. It was dark at the time, but the street was lighted (to what extent is not shown by the evidence), and the weather was "clear and dry." There are two travel lanes westbound on Ellwood separated by a broken line in the center of the street, and parking is permitted on both sides of the street at the curbs.

Auburn is 30 feet wide and intersects Ellwood at right angles. There is no evidence of any traffic controls at this intersection, and there are no marked pedestrian crosswalks at this location.

The plaintiff was crossing Ellwood from the north to the south side thereof walking in the regular pedestrian crossing included within the prolongation of the sidewalk on the east side of Auburn. He was 85 years of age (Tr. p. 104) and was in good health for a person of his age. (Tr. p. 124.) His hearing was good before the accident, but his vision was impaired in that he could only see "light" in one eye. (Tr. p. 109.) He was wearing eye glasses at the time which were knocked off and

damaged. (Tr. p. 113, 114.) He had no recollection of the facts of the accident.

The investigating police officer upon his arrival found the plaintiff lying in the center of a pool of blood about 6 feet in diameter about 24 feet south of the north curb line of Ellwood in the crosswalk (Tr. p. 28) or about 3 feet south of the center of Ellwood. The plaintiff had left his home nearby to "take a walk" and was struck by the defendant's vehicle which was travelling in the left-hand westbound lane of Ellwood. While there were no visible marks on the defendant's vehicle to indicate where it had collided with the plaintiff's body, the plaintiff contended and the evidence showed that he was struck by the right front side of the "wrap-around" front bumper of defendant's Lincoln Continental automobile. No skid marks were found at the scene.

The eyewitness Towe was driving her vehicle in the right-hand westbound lane of Ellwood about a "half block" behind that of the defendant. (Tr. p. 68.) There were no vehicles between her and the defendant's car nor between her and the plaintiff who she observed walking "very slowly" across the street. The plaintiff was "probably" in her lane when she first saw him. She did not see anything between the plaintiff and the defendant's car to prevent him from seeing it, and she never saw him look to his left. She testified that the plaintiff walked directly into the path of the defendant's vehicle and was hit by its right front fender. (Tr. p. 76.)

The eyewitness Johnston driving his vehicle had followed the defendant's vehicle for a number of blocks before the accident as they both drove west. As the vehicle of the defendant neared the accident scene, the witness was "immediately" behind (Tr. p. 90) the defendant's car, which distance the witness estimated to be 50 or 100 yards and in the left-hand westbound driving lane. The defendant's car was "moving with the traffic" (Tr. p. 95) with its rear lights and headlights burning (Tr. p. 99, 177) travelling at a constant speed of 20 to 25 miles per hour "straight" in the lane going west. Johnston did not see the plaintiff at any time before the moment of impact when he saw him "in a vertical position" adjacent to the right front bumper of the defendant's vehicle. He then saw the plaintiff fall in a northerly direction. (Tr. p. 91, 92.)

Both eyewitnesses placed the plaintiff south of the center line of Ellwood at the time he was struck.

At the outset, it is well to reflect upon the principle underlying the rule governing the power of the trial court to set aside a verdict of the jury. Code, § 8–352. "[T]he guiding principle for the court is not what it may think the jury ought to have done, or what the court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men, the jury could have found such a verdict upon the evidence." Burks Pleading and Practice, 4th Ed., p. 612. As Justice Browning has written, "it is only when the issue is one about which reasonable persons cannot differ — the question so plain in the meaning and interpretation that should be given to it — that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine." *Virginia E. & P. Co. v. Steinman,* 177 Va. 468, 474 (1941). This is such a case, although the court is fully mindful of the settled rule that ordinarily the question of negligence, whether primary or contributory, is almost invariably one for the jury. *Thornton v. Downes,* 177 Va. 451, 457 (1941).

By statute the plaintiff in this case had the right of way, and the defendant was under a duty to yield it to him and to change his course, slow down, or come to a complete stop if necessary to permit the pedestrian to cross the intersection. But the statute also provides that the pedestrian shall not cross the intersection in disregard of approaching traffic. Code, § 46.1–231(a), (b), (c).

The case law is plain where an accident happens under these circumstances. The plaintiff had the right of way and that right of way "begins on one side of the street and extends until the pedestrian has negotiated the crossing." *Danner v. Cunningham,* 194 Va. 142, 145 (1952).

During his crossing, the plaintiff was under a duty to exercise reasonable care to keep a proper lookout. In view of his defective eyesight, it was his duty to exercise that degree of care which an ordinarily prudent person, also having defective eyesight, would use and exercise under similar circumstances. While no higher standard of care is placed upon one with an infirmity of the senses, a person so affected must put forth a greater amount of effort to discharge his duty than one not acting under any disability. *Marks' Adm'r v. Petersburg RR. Co.,* 88 Va. 1, 8 (1891); 1 Michie's Law of Automobiles, Section 119, p. 520. *See also, Paytes v. Davis,* 156 Va. 229, 234 (1931).

Moreover, the plaintiff was not required to keep a constant watch for oncoming cars while he crossed, under the penalty of being convicted

of contributory negligence. *Reese v. Snelson*, 192 Va. 479, 487 (1951). In addition, he could assume that the defendant would give him the right of way. *Bethea v. Virginia Elec. & Power Co.*, 183 Va. 873, 880 (1945). Nevertheless, the plaintiff was not entitled to arbitrarily assert his right of way by crossing in the face of a car dangerously close to him. *Phillips v. Stewart*, 207 Va. 214, 218 (1966). And since traffic was coming from only one direction, he was under the legal duty of looking to his left for approaching vehicles. *Whichard v. Nee*, 194 Va. 83, 88 (1952).

When the defendant relies on contributory negligence on the part of the plaintiff to defeat a recovery by the plaintiff, the burden is on the defendant to prove it, unless such negligence is disclosed by the plaintiff's evidence or might be fairly inferred from all the circumstances; and in the absence of such proof, the person injured must be presumed to have been without fault. *Core v. Wilhelm*, 124 Va. 150, 157 (1919). As stated, the plaintiff did not recall any of the facts of the accident. Therefore, when the negligence of the defendant has been established, as here, the presumption is, "though perhaps slight," that the plaintiff exercised reasonable care. *Southern R. Co. v. Bryant*, 95 Va. 212, 221 (1897). This is a presumption of law, however, and only obtains in the absence of evidence. "When evidence comes in, the presumption goes out," but the burden is upon the defendant to overcome the presumption by evidence. *Armstrong v. Rose*, 170 Va. 190, 204 (1938).

It is with the background of these settled rules of law as applied to the circumstances of this case that the evidence must now be analyzed.

The jury has settled the question of the defendant's negligence which included the finding that the defendant was the operator of the vehicle which struck the plaintiff and that he left the scene of the accident without giving account thereof to the police at the scene.

Viewing the evidence in the light most favorable to the plaintiff, we have a case where the defendant was travelling in the left-hand westbound travel lane at a constant moderate speed without any deviation in course at night with headlights burning. There is absolutely no conflict in this evidence except from the testimony of the defendant himself which the jury has refused to accept.

As to the actions of the plaintiff up to and including the impact, we have the testimony of the two eyewitnesses, only one of which observed the plaintiff prior to the moment of impact. The plaintiff con-

tends that different inferences can be drawn from the eyewitnesses' testimony and that the evidence is not sufficient to overcome the presumption that the plaintiff used due care. *Powell v. Nichols*, 209 Va. 654, 659 (1969); *Burks v. Webb*, 199 Va. 296, 303 (1957). Moreover, the plaintiff says that a conflict exists between the testimony of the witness Johnston to the effect that the plaintiff was standing "vertical" at the moment of impact and that of Miss Towe that the plaintiff stepped in front of the moving automobile, and that such conflict is for the jury to resolve. *Burnette v. McDonald*, 206 Va. 186, 191 (1965).

A close review and examination of the pertinent testimony demonstrates no conflicts in the evidence nor evidence from which different inferences may be drawn. The evidence germane upon the subject of lookout requires the court to conclude that the plaintiff failed to keep a reasonable lookout and that he moved directly into the path of the defendant's vehicle which was in plain view. Miss Towe positively testified to this when she answered "yes" to the question, "But as far as you could tell, even though this black car by this time was almost on top of him, he walked directly into the path of it and was hit by its right front fender?" (Tr. p. 76). She was in a position to see without any obstruction to her view. She had first seen the plaintiff when he was in her lane, and she did not see him look to his left at any time before he was struck. It is true that at one point, she answered that she did not remember whether the plaintiff stopped when he *got to the center of the street* and *before* he got into the defendant's lane. (Tr. p. 76, line 15.) But this relates to the plaintiff's action *before* he crossed the center of the street and is not inconsistent with the statement that he stepped into the defendant's path, which related to his conduct as he moved across and south of the center of the street.

If the presumption of due care allows a conclusion that the plaintiff looked to his left and determined he could cross the street safely at a point in his crossing *before* Miss Towe saw him, that does not save his case. He was walking slowly a distance of 21 feet to the center of the street with a car approaching in plain view. He should have looked again — not continuously but again — and he would have seen the danger. On the other hand, if such presumption allows a conclusion that he may have looked to his left and misjudged the defendant's distance away, *after* she observed him but that she failed to see him do so (and such a premise is indulging in the prohibited practice of basing an inference on a presumption contrary to proven fact — "Q. Well, my

question was not how far he was from you, but did you ever see him look to the left, as you came toward him? A. No."), this does not save his case. If he looked to his left (the only direction from which cars were approaching), he either failed to see the vehicle in close proximity to him, or if he saw, he failed to heed that which the lookout must have disclosed to him. To paraphrase *Whichard, supra,* he continued across the roadway when the oncoming car was in plain view at all times, and he had an equal, if not a better, opportunity to see the defendant than did the defendant to see him. A single glance to his left would have warned him of its close approach, and he could have as readily stopped as he could have looked. 194 Va. 87. This is particularly true since under all the evidence, he was moving "very slowly."

Moreover, the blow was struck when a portion of his body, probably his left leg, was a matter of inches into the zone of danger since under all of the testimony, he was struck by the right front side of the defendant's vehicle and came to rest *in the crosswalk* without being propelled outside of it. A glance to the left and a pause by the plaintiff before he entered the defendant's path would have avoided the accident.

The plaintiff contends that the jury could have concluded that the plaintiff was standing in the street attempting to extricate himself from danger in view of Johnston's testimony that he was "vertical." Only one reasonable inference can be drawn by reasonable men from a close reading of all of Johnston's testimony and that is that he saw the plaintiff at the instant he was struck and as he was falling, having stepped in front of the defendant's vehicle. (Tr. p. 91, line 18, to Tr. 91, line 22; Tr. 98, line 13–20).

The cases are legion in which pedestrians have been struck in crosswalks. There are ones which have held that the question of contributory negligence was for the jury, such as *Phillips v. Stewart, supra; Burks v. Webb, supra; Danner v. Cunningham, supra; Overton v. Slaughter,* 190 Va. 172 (1949); *Bethea v. Virginia Elec. & Power Co., supra; Virginia E. & P. Co. v. Steinman, supra; Thornton v. Downes, supra; Lucas v. Craft,* 161 Va. 228 (1933); *Moore v. Scott,* 160 Va. 610 (1933); and *V.E.P. Co. v. Blunt,* 158 Va. 421 (1932). There are others which have held the plaintiff contributorily negligent as a matter of law, such as *Whichard v. Nee, supra; Arlington etc. Trans. Co. v. Simmonds,* 182 Va. 796 (1944), and *Meade v. Saunders,* 151 Va. 636, 641 (1928). None of these cases are precisely in point of fact with this

case, and each must be decided on its own peculiar facts. The plaintiff relies heavily on *Phillips v. Stewart, supra*, but Mr. Justice Carrico makes it clear in that case that the one "overriding fact" (Webster's New International Dictionary, Second Ed. defines "overriding" as "to set aside; supercede, annul . . . .") which saved the plaintiff was that the defendant slowed his vehicle indicating that he would stop to allow the plaintiff to cross in front of him. That opinion certainly indicates that without such fact which set aside, superceded, and annulled the plaintiff's actions, his negligence would have been a question of law. There is no such overriding fact here because all of the evidence is that the defendant drove at a constant speed without any course deviation.

In view of what has been said above, the Court erred in failing to sustain the defendant's motion to strike the plaintiff's evidence. (Tr. p. 162) For the reasons stated, the motion to set aside the verdict is sustained, and judgment is entered for the defendant.